**SEA GULL LUBRICANTS, Inc., to USE of NATIONAL ACME CO. et al., v. UNITED STATES.**

No. 45081.

Court of Claims.

June 7, 1943.

Peter Reed and Ashley M. Van Duzer, both of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and Orrin B.

Werntz, all of Cleveland, Ohio, on the briefs), for plaintiff.

Joseph H Sheppard, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyer, both of Washington, D. C., on the brief), for the United States.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

Plaintiff sues to recover the federal excise tax of four cents a gallon which it paid on two types of cutting oil sold by it, through the Clark Company, a subsidiary, to purchasers who intended to use, and did use, the oils in metal cutting operations. The Commissioner of Internal Revenue classified the cutting oils as "lubricating oil," within the meaning of the Revenue Act of 1932, c. 209, Sec. 601,[1] and taxed them as such. He also denied a timely claim for refund filed by plaintiff.

Plaintiff contends that cutting oils, manufactured or compounded for use in the cutting of metals, are not lubricating oils and are therefore not subject to a tax which applies only to lubricating oils.

The substances in question were oils. One of the two types taxed to plaintiff, called "Clark's X Cutting Oil", was compounded from mineral oil, animal fat, sulphur and chlorine. The other kind, sold as "Elaine Oil", was a commercial form of oleic acid, a fatty acid derived from lard oil. The purchaser of it mixed it with a base mineral oil, to which had been added chlorine and sulphur. They were always designated as oils, and no contention seems to have been made, either before the Commissioner of Internal Revenue or here, that they were not. Our question therefore is not whether they were oils, but whether they were lubricating oils.

The applicable Revenue Act simply taxed "lubricating oils" without further defining them. The Treasury Regulations likewise gave no definition of the word lubricating.[2]

In S. T. 505, XI-2 Cumulative Bulletin (1932) at page 448 appears the following:

"Regulations 44, Article 11: Scope of tax.—Cutting oils and water soluble oils used for lubricating purposes held taxable. —Advice is requested whether cutting oils and water soluble oils are lubricating oils and subject to the tax under section 601(c) 1 of the Revenue Act of 1932.

"Under Treasury Decision 4339, issued July 16, 1932 (see page 446), any oil having both lubricating and nonlubricating uses is taxable when sold or used for lubrication.

"Cutting oils and water soluble oils, used in cutting and machining operations on metals are used for lubricating purposes and are therefore held to be taxable under section 601(c) 1 of the Revenue Act of 1932, when sold by the manufacturer or producer."

Plaintiff urges that the statement in the third paragraph of the quotation as to the operation of cutting oils is erroneous; that they do not, in the uses for which they were bought from plaintiff, lubricate in the sense in which Congress used that word. Plaintiff urges that the meaning of the word lubricating as applied to oils, both in the statute here applicable and in common speech, relates to the process of inserting a film of oil between two moving parts such as a crankshaft and the bearings in which it turns, or a piston and the wall of the cylinder in which it moves.

As shown in finding 10, if the pressure of the moving parts upon each other is great the film is squeezed very thin, and the pressure and accompanying heat may produce a chemical change in the oil, so that what keeps the moving metals from seizure and wear is not a film of liquid, but a molecular film of substance resulting from the chemical reaction in the oil, which substance is deposited on the metal surfaces.

The ideal lubricating fluid, then, to use in situations where this kind of pressure or heat exists or may develop is one which will serve as a film lubricant until the pressure or heat develops which makes it impossible for it to serve longer as such, but which contains substances which, under the pressure or the heat, will, as a result of the resulting chemical changes, deposit the kind of nonfluid molecular film which will best keep the moving metal parts from wearing each other. Some of these substances have been discovered to be animal fats, or oleic acid, sulphur and chlorine. Mineral oils or greases containing such additives are used to lubricate

---

[1] 47 Stat. 169, 26 U.S.C.A. Int.Rev. Acts, page 603.

[2] Treasury Regulations 44 (Revised September, 1934).

the hypoid differential gears of automobiles, where very high pressures are developed.

In the process of metal cutting several problems must be taken account of. If the process is one of grinding, or cutting on a lathe, and if the speed and duration of the process is such as to produce great heat, the cutting instrument should be cooled to prevent it from being damaged, and the "work piece" or metal which is being cut should be cooled to keep it from being distorted. This cooling is accomplished by flooding the area where the tool meets the work piece by jets or liquid pouring from ten to eighty gallons a minute. Water is the best liquid coolant, but it is not used for this purpose. The liquid poured upon the work also serves to wash away the cuttings or chips. This purpose would also be served by water. Another important purpose which the liquid must serve is to serve as an antiweld or anti-seizure agent to reduce the friction between the tool and the work piece, and between the tool and the chip or cutting, if there is a substantial body to the cutting. This last purpose would not be served by water, and oil is the substance which is actually used to facilitate metal cutting, since it satisfactorily serves all three purposes.

The freshly cut metal, being chemically clean, is in an active or nascent condition which causes it to tend to adhere to other like surfaces. The tool, likewise, is scraped clean and there would be adhesion between the two, if their condition of cleanness were not cured by the constant restoration of a film of nonnascent substance. In the beginning of the cutting operation, before the heat and the pressure become great, there may be a period, depending on the speed and nature of the operation, during which this nonnascent substance is the liquid oil itself. This would seem to be true when pipe or bolt threading or metal drilling or planing is carried on at slow speeds. There is seizure if no oil is used, and ordinary mineral oil prevents the seizure. But when the heat and pressure are great, friction and adhesion are still prevented, by the use of cutting oil, though the oil loses its fluid nature at the point of contact of the tool and the metal. The reason why it still prevents adhesion seems to be that, when it is converted by heat and pressure, the oil and its sulphur and chlorine additives produce substances which are deposited on the tool and the metal and thus prevent the surfaces from being clean and nascent, and tending to adhere.

■ This whole process seems to us to be a process of lubrication. Its purpose is to render the tangent surfaces slippery so that they will move upon one another instead of sticking. The fact that the industry which produced cutting oils called the process lubrication is significant. The fact that, even after persons producing or selling cutting oils became tax-conscious, plaintiff's witnesses who thought the word "lubrication" was not the proper word for the process, had no other generic term to describe it, is significant. It cannot be supposed that Congress, when it imposed a tax on lubricating oils, did not intend to tax oils which their makers advertised and sold for the purpose of lubrication. In statutes, as in ordinary speech, words mean what those who commonly used them suppose them to mean, unless a strong case is made to show that the legislature, or other user of the words, actually intended otherwise. Here there is no such showing.

■ Plaintiff urges that, by interpreting the tax statute as including cutting oils within its scope, we encounter a constitutional problem, because cutting oils are cheaper than ordinary lubricating oils, and therefore a tax of four cents a gallon, applied to them, is so heavy a burden as to make the tax discriminatory as to them. The only factual basis offered for this argument is that some lubricating oils, not cutting oils, retail for as much as $1.40 per gallon, while cutting oils retail at from 10 to 30 cents per gallon. But the $1.40 price is far above the average price for oils which are concededly taxable, and many such oils sell for as little, or almost as little, as some cutting oils. No serious constitutional question is presented by these facts.

Plaintiff's petition will be dismissed. It is so ordered.

JONES, Judge, took no part in the decision of this case.