**Ann S. BENTON**

v.

**The UNITED STATES.**

No. 101–72.

United States Court of Claims.

Dec. 19, 1973.

**1018**

John I. Heise, Silver Spring, Md., attorney of record, for plaintiff.

Judith A. Yannello, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Howard C. Westwood and Paul J. Tagliabue, Washington, D. C., filed a brief for the Federal Administrative Law Judges Conference as amicus curiae. Covington & Burling, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and KASHIWA and BENNETT, Judges.

### ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

Ann S. Benton brings this action as sole heir and personal representative of her late husband, Thaddeus G. Benton. Plaintiff alleges that her husband, while employed as a Federal hearing examiner, was retired for physical disability improperly and without the protective procedures of Section 11 of the Administrative Procedure Act (APA). As a result, she claims she is entitled to recover back

salary, lump sum benefits payable upon her husband's death, and appropriate retirement benefits.

Mrs. Benton's action presents an issue of first impression: whether Section 11 of the APA, which requires a hearing as prescribed in that Act for the removal of a Federal hearing examiner,[1] applies to the Civil Service Commission's involuntary removal and retirement of a hearing examiner on a disability annuity under the Civil Service Retirement Act, 41 Stat. 614 (1920), as amended, 5 U.S.C. §§ 8331–8348 (1970). In a close and difficult case in which we have been aided by the able arguments and excellent briefs of the parties,[2] we have concluded that this question should be answered in the affirmative and that the plaintiff is entitled to recover.

The case is before us on cross-motions for summary judgment, and there is no dispute in the facts. On October 11, 1961, Thaddeus Benton was appointed as an examiner pursuant to Section 11 of the APA, which is codified in part in 5 U.S.C. § 3105 (1970). He was employed by the Interstate Commerce Commission (ICC), and he held a position in the classified civil service of a hearing examiner, GS–16, at the time of retirement. After Mr. Benton had served as an examiner for seven years, the Director of Personnel for the ICC notified him that the agency was proposing to initiate proceedings to terminate him for physical disability. On October 30, 1968, the ICC filed an application with the Civil Service Commission (CSC), requesting that Mr. Benton be retired for disability. By letter of October 31, 1968, Mr. Benton objected to the procedure.

On January 21, 1969, the CSC issued a notice approving the application for involuntary retirement on the basis of disability and directed Mr. Benton's separation. Mr. Benton was not accorded

any of the procedures of Section 11 of the APA, which provides for a hearing and removal only for good cause established on the record.

On January 22, 1969, the ICC notified Mr. Benton that he would be separated effective January 24, 1969. By letter of January 24, 1969, Mr. Benton requested that the agency furnish him a copy of its decision in connection with his case, and also all documents submitted by the agency to the CSC.

On January 23, 1969, the ICC advised plaintiff's husband that the CSC had rescinded the approval of disability retirement pending consideration of further evidence from Mr. Benton. Accordingly, the notice of January 22, 1969, was rescinded.

On February 7, 1969, the CSC Bureau of Retirement, Insurance, and Occupational Health, notified Mr. Benton that the involuntary application for retirement filed by the ICC had been approved. Immediately upon receipt of said notice, Mr. Benton filed with the CSC a motion to vacate and set aside the approval of the disability retirement application on the grounds that the procedure was improper and not effected in accordance with the APA. Specifically, Mr. Benton pointed out that he was accorded no opportunity for hearing within the meaning of the Act and that his separation could only be effected pursuant to section 11 thereof. By notice of February 11, 1969, Mr. Benton advised the Chairman of the ICC of his objection to the procedure being followed to effect his separation and again referred to omissions under the APA.

On February 12, 1969, the Personnel Director of the ICC notified Mr. Benton that his retirement was effective at the close of business on February 12, 1969. By written notice of February 13, 1969, the CSC Bureau of Retirement notified

---

1. Both parties have used the statutory title "Hearing Examiner" in referring to Mr. Benton, but it is noted that the title "Administrative Law Judge" was adopted by the Civil Service Commission in 1972 in lieu of

"Hearing Examiner," 37 Fed.Reg. 16787 (1972).

2. We have also been assisted by the brief *amicus curiae* filed in behalf of the Federal Administrative Law Judges Conference.

Mr. Benton that the General Counsel of the CSC had ruled that the APA was not applicable to disability retirement claims.

Mr. Benton appealed the action of the Bureau of Retirement to the Appeals Examining Office of the CSC citing omissions in the removal process as required by the APA. Although an informal hearing was held, Mr. Benton was not accorded a hearing which met the procedural requirements of Section 11 of the APA.

The Appeals Examining Office sustained the decision of the Bureau of Retirement upholding Mr. Benton's separation, and on August 13, 1969, the CSC Board of Appeals and Review issued a decision sustaining the action of the Appeals Examining Office.

Thereafter, Mr. Benton's attorney requested the Chairman of the CSC, in the exercise of his discretion, to entertain a further appeal and consideration of the case pursuant to the Commissioners' authority under 5 C.F.R. § 772.308 (1970). The Chairman of the Commission was specifically requested to rule whether Mr. Benton was entitled by law to a hearing under Section 11 of the APA before he was removed from his office. On September 12, 1969, the Federal Trial Examiner's Conference, through counsel, requested the Chairman of the CSC to grant leave for the conference to file a brief in the case. On January 9, 1970, a brief on behalf of the Federal Trial Examiner's Conference was submitted to the CSC. On January 15, 1970, the Chairman of the Hearing Examiner's Committee of the American Bar Association advised the Chairman of the CSC that Counsel of the Administrative Law Section of the American Bar Association concluded that "involuntary retirement for disability in the case of hearing examiners should be handled as removal for cause under Section 11 of the Administrative Procedure Act."

Thaddeus Benton died on January 26, 1970. The CSC advised plaintiff on January 30, 1970, that, although Thad-

deus Benton had passed away, the Commissioners of the CSC had voted to reopen the case and to consider the contentions made as to the applicability of Section 11 of the APA. By March 1972, plaintiff had received no further notice from the Commission regarding Mr. Benton's claim and she filed this suit. Defendant's answer states that on April 28, 1971, the CSC issued a decision denying Mr. Benton's claim.

I

Section 11 of the APA reads in pertinent part as follows:

A hearing examiner appointed under section 3105 of this title may be removed by the agency in which he is employed only for good cause established and determined by the Civil Service Commission on the record after opportunity for a hearing. 5 U.S.C. § 7521 (1970).

■ The proper starting point for interpreting section 11 is the language of the statute itself. We have held that the ordinary and commonly understood meaning shall be attributed to the terms employed in the statute, unless a contrary meaning is clearly intended. Sea Gull Lubricants, Inc. v. United States, 99 Ct.Cl. 716, 730, 50 F.Supp. 230, 237 (1943), cert. denied, 321 U.S. 774, 64 S. Ct. 616, 88 L.Ed. 1069 (1944); Coleman v. United States, 93 Ct.Cl. 127, 131–133, 37 F.Supp. 273, 276 (1941). In the ordinary sense, the word "removed" denotes an involuntary separation of the employee from his position. Giving the word its commonly understood meaning, involuntary retirement for disability would be a removal, as plaintiff contends.

It is undisputed that Mr. Benton was retired because of the determination that his unsatisfactory service required his separation from his position. The Appeals Examining Office of the Civil Service Commission concluded:

In summary, we have a situation in which it is clear that the work performance of this employee [Mr. Ben-

ton] has been unsatisfactory for a period of approximately two (2) years.

If Mr. Benton had not completed five years of civilian service at the time of his separation, he could not have been retired for disability under the Civil Service Retirement Act, 5 U.S.C. § 8337 (1970). In that event, the Commission could not have terminated his employment for unsatisfactory performance except by compliance with Section 11 of the APA, including the procedural requirements contained in 5 U.S.C. §§ 556 and 557 (1970). In either case, the hearing examiner is removed, because the performance of his duties is terminated against his will; either form of action may be grounded on either physical or mental disability, and neither can be said to be of a disciplinary nature.

Therefore, if we ended our inquiry by applying the commonly understood meaning of section 11, we would have to decide that plaintiff is entitled to prevail in this action.

## II

■ A statute cannot be divorced from the circumstances existing at the time it was passed or from the evil which Congress sought to prevent and correct. Akins v. United States, 194 Ct.Cl. 477, 483, 439 F.2d 175, 177 (1971). Both parties rely on the legislative history of the APA, and we also turn to this source as an aid in interpreting the statutory provisions at issue.

In the late 1920's and 1930's there was growing dissatisfaction with the administrative process. Administrative decisions, especially factual findings, were being accorded considerable finality, and there was concern that this power was not sufficiently protected to guarantee fairness and impartiality in the administrative process. See Wong Yang Sung v. McGrath, 339 U.S. 33, 36–38, 70 S.Ct. 445, 94 L.Ed. 616 (1950); Macy, The APA and the Hearing Examiner: Products of a Viable Political Society, 27 Fed.B.J. 351, 353–59

(1967). In 1937, the President's Committee on Administrative Management recommended that agencies separate adjudicatory functions from the pressures and influences of officers responsible for administering policy. Administrative Management in the Government of the United States, Report of the President's Committee on Administrative Management 40 (1937). Four years later, the Attorney General's Committee on Administrative Procedure stressed the need for "competent and well-paid [hearing examiners] exercising functions of responsibility and interest." Final Report of the Attorney General's Committee on Administrative Procedure 46 (1941).

It was with these sentiments in mind that Congress began formulating Section 11 of the APA. When Senator McCarran presented the APA for passage he made these statements:

> Section 11 relates to examiners . . . Under this section examiners are removable only for good cause determined by the Civil Service Commission, after opportunity for hearing, and upon the record thereof.

> \*   \*   \*   \*   \*   \*

> Therefore, it will be the duty of reviewing courts to *prevent avoidance* of the requirements of the *bill by any manner or form of indirection,* and to determine the meaning of the words and phrases used, insofar as they have not been defined in the bill itself. For example, in several provisions of the bill, the expression "good cause" is used. The cause so specified must be interpreted by the context of the provision in which it is found, and the purpose of the entire section and bill. The cause found must be real and demonstrable. If the agency is proceeding upon a statutory hearing and record, the cause will appear there. \*   \*   \* (Emphasis supplied). Administrative Procedure Act—Legislative History, S.Doc.No.248, 79th Cong., 2d Sess. 324, 326 (1946).

The Senate Report states the purpose of section 11 as follows:

> The purpose of this section is to render examiners *independent and secure in their tenure* and compensation. *The section thus takes a different ground than the present situation, in which examiners are mere employees of an agency,* and other proposals for a completely separate "examiners' pool" from which agencies might draw for hearing officers. Recognizing that the entire tradition of the Civil Service Commission is directed toward security of tenure, it seems wise to put that tradition to use in the present case. However, additional powers are conferred upon the Commission. *It must afford any examiner an opportunity for a hearing before acceding to an agency request for removal, and even then its action would be subject to judicial review.* The hearing and decision would be made under sections 7 and 8 of this bill. (Emphasis supplied.). *Administrative Procedure Act—Legislative History* S.Doc. No. 248, 79th Cong., 2d Sess. 215 (1946).

The defendant argues that the legislative history of the APA shows that (1) section 11 was enacted to protect the independence of the hearing examiners by giving the Civil Service Commission rather than the employing agencies the exclusive authority to remove the examiners; (2) the Civil Service Retirement Act has, since 1920, authorized the Commission to provide for the involuntary retirement of disabled Government employees, and (3) that the APA could not have been intended to apply to actions taken under the Retirement Act.

We cannot concur in such a restrictive reading of the legislative history. We agree that one of the principal problems sought to be corrected by section 11 was the power of an agency to exert pressure on a hearing examiner by threatening his removal or discharge. To eliminate the influence of the agency, Congress provided for removal by an independent agency, the CSC. However, Congress went considerably further by specifying that a hearing examiner could not be removed except by a hearing conducted in accordance with the requirements of Sections 7 and 8 of the Act. In this respect, Congress made it clear that the hearing examiners are not to be treated as "mere employees of an agency."

We reach our conclusion in recognition of the fact that the APA was a sweeping piece of remedial legislation which was a long time in coming. For that reason, we think it should be given a broad and generous interpretation in light of the objectives sought to be accomplished.

Nothing in the legislative history of the APA indicates that Congress intended to exempt involuntary retirement for disability from the procedures established by section 11. On the contrary, the objectives of section 11 could well be frustrated by allowing an involuntary separation without compliance with the protective procedures that are designed to insure fairness as well as the appearance of fairness. As the Supreme Court stated in Shaughnessy v. Pedreiro, 349 U.S. 48, 51, 75 S.Ct. 591, 594, 99 L.Ed. 868 (1955), "the Procedure Act is to be given a 'hospitable' interpretation," and in the present case, a broad reading of the removal provision is much more in harmony with the intent of the drafters than the restrictive one urged by the defendant.

### III

Our reading of section 11 is also supported by the regulations of the CSC which define removal for purposes of Section 11 of the APA in such a way as to include involuntary retirement for disability. The CSC regulation reads:

> "Removal" means an *involuntary change in the status* of an administrative law judge, including discharge, demotion, and suspension from the position of administrative law judge and demotion, reassignment, and promotion, to a position other than that of administrative law judge. (Emphasis

supplied.) 5 C.F.R. § 930.202(f) (1973).

The regulations provide an exception to the removal provision in only two types of action: discharges of examiners that the CSC finds to have been appointed, or otherwise holding their positions, in violation of law, and discharges based upon national security. 5 C.F.R. § 930.214(c) (1973). The regulations interpreting section 11 do not otherwise define the phrase "involuntary change in status." Thus, the regulation contemplates that "removal" includes any change of status without the consent or against the will of the affected employee. Clearly, an involuntary retirement falls within this category. Moreover, the changes in status specifically mentioned in the regulation are not limited to disciplinary or non-retirement types of changes. Promotion is listed as one of the changes contemplated by the term "removal"; manifestly, this is not a disciplinary action.

■ These interpretative regulations have remained essentially the same since the Act was passed in 1946, and thus provide a contemporaneous interpretation of the Act by those called upon to enforce it.[3] Moreover, the fact that these regulations have been in effect for over twenty years, and were in effect when the APA was reenacted and codified in 1966, gives them additional weight in our consideration.

■ We find, therefore, that the Commission did not follow its own regulations on removal. Instead, it reached, in our view, an erroneous interpretation

of the statute based upon a strained application of prior court decisions. While an agency's interpretation of legislation it is authorized to administer and of its own regulations is ordinarily entitled to great weight, the court bears the ultimate responsibility for determining the legislative intent. *See* Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission, 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968). Courts are not "obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with the statutory mandate or that frustrate the congressional policy underlying a statute." National Labor Relations Board v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

**IV**

■ Section 12 of the APA provides, in its current codified form, that a "[s]ubsequent statute may not be held to supersede or modify [the provisions of the APA, including section 11] except to the extent that it does so expressly." 5 U.S.C. § 559 (1970).[4]

The Civil Service Retirement Act first became effective in 1920, 41 Stat. 614. In 1956, some ten years after the passage of the APA, the Retirement Act was amended so as to provide for the first time that the Commission's findings of total disability in retirement cases are "final and conclusive and are not subject to judicial review."[5] The 1956 amendment of the Retirement Act contained no express language modifying

3. Like the present regulations, the Commission's first regulations interpreting section 11 provided that "involuntary change[s] in the status" of examiners were "removals." Beyond that, the original regulations were even stronger in terms than the present ones: they provided that *any* involuntary change" in the status of an examiner was a "removal." *See* 5 C.F.R. § 34.2(j) (1947). (Emphasis supplied.) Regulations reiterating that *any* involuntary change in an examiner's status constituted a "removal" continued in force without interruption until 1963. *See* 5 C.F.R. § 34.2(f) (1963). In

1964, the word "any" was changed to "an," and a "removal" became "an involuntary change in status." 5 C.F.R. § 930.202(f) (1964).

4. As originally enacted, section 12 provided that "[n]o subsequent legislation shall be held to supersede or modify the provisions of this Act except to the extent that such legislation shall do so expressly." 60 Stat. 244 (1946).

5. Federal Executive Pay Act of 1956, ch. 804, § 16(c), 70 Stat. 758, currently codified as 5 U.S.C. § 8347(c) (1970).

Section 11 of the APA and, in fact, made no reference whatever to section 11. Under these circumstances, the Commission's decision that the involuntary retirement of a hearing examiner for disability is excepted from the provisions of Section 11 of the APA is, we think, clearly erroneous and in conflict with Section 12 of the APA.

Our conclusion in this respect is based on the closely analogous decision of the Supreme Court in Shaughnessy v. Pedreiro, *supra*. In that case, the respondent, an alien, sought judicial review of a deportation order under Section 10 of the APA. The Immigration and Nationality Act of 1952, under which respondent had been ordered deported, provided that deportation orders shall be "final." The Government contended that this provision, a reenactment of an earlier statute that the Court previously had held to preclude judicial review, barred the respondent's claimed right of review under section 10. Rejecting the Government's contention, the Court held that the provision of the 1952 Act making deportation orders "final" did not "expressly" supersede or modify the APA within the meaning of section 12 thereof, and that the administrative decision was subject to judicial review.

Like the respondent in *Shaughnessy*, hearing examiners have been given certain specific procedural rights by the APA (in all removal actions), including the right to judicial review under Section 10 of that Act. As in *Shaughnessy*, the Government seeks to apply the procedure permitted by a statute which substantially reduces the procedural protections granted by the APA. Like the Immigration and Nationality Act in *Shaughnessy*, the statute that the Government relies on here was initially en-

acted prior to the APA, but reenacted or amended after the APA with a changed content. As in *Shaughnessy*, the subsequent legislation invoked in the present case to supersede the APA speaks in general terms without mentioning or referring to the APA. Consequently, we hold that the 1956 amendment to the Retirement Act constituted a "subsequent statute" or "subsequent legislation" within the meaning of section 12 and that it cannot supersede or modify Section 11 of the APA, having failed to do so expressly.

V

■ The defendant's principal argument in this case is that the courts have recognized a clear distinction between a removal for cause and a separation based on an involuntary retirement for disability. This is the ground upon which the decision of the Commission is based. Removal for cause, the argument continues, denotes a disciplinary type of action, whereas involuntary retirement is viewed as a non-disciplinary type of action. This argument is based on two decisions by the United States Court of Appeals for the District of Columbia, Ellmore v. Brucker, 99 U.S.App.D.C. 1, 236 F.2d 734, cert. denied, 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244 (1956); Murphy v. Wilson, 99 U.S.App.D.C. 4, 236 F.2d 737, cert. denied, 352 U.S. 954, 77 S.Ct. 326, 1 L.Ed.2d 243 (1956), which held that an involuntary separation for disability under the Retirement Act need not comply with the procedural requirements of the Lloyd-LaFollette Act or the Veterans' Preference Act.[6]

We have carefully considered these cases and have determined that they are inapposite. The cases deal with the removal provisions of the Veterans' Pref-

---

6. This court has supported the rule laid down in Ellmore v. Brucker and Murphy v. Wilson. *See, e. g.*, Scroggins v. United States, 184 Ct.Cl. 530, 534, 397 F.2d 295, 298, cert. denied, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); McGlasson v. United States, 184 Ct.Cl. 542, 549–550, 397 F.2d 303, 307 (1968); Kleinfelter v. United States, 162 Ct.Cl. 88, 93–94, 318 F.2d 929, 932 (1963) (dictum); Gaines v. United States, 158 Ct.Cl. 497, 502, cert. denied, 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962).

erence Act and the Lloyd-LaFollette Act, which were enacted for wholly different purposes than Section 11 of the APA and apply to civilian employees of the Government who do not occupy the special status of hearing examiners. Neither the Veterans' Preference Act nor the Lloyd-LaFollette Act was designed to safeguard the integrity of the administrative process by assuring hearing examiners a security of tenure which may not be terminated except in compliance with specified procedural safeguards. As we have previously pointed out, the legislative history of the APA demonstrates that Congress intended that hearing examiners could not be separated from their employment except by following a procedure wholly different from that applicable to "mere employees of an agency," such as those who are subject to removal under the provisions of the Veterans' Preference Act and the Lloyd-LaFollette Act. We cannot agree with defendant that the term "removal for good cause" has become a term of art in legal parlance and that in every case and in every statute relating to civilian employees of the Government, it means a removal for disciplinary reasons.[7] Therefore, we find no reason for extending the rationale of the decisions in Murphy v. Wilson and Ellmore v. Brucker and their progeny beyond the particular statutes and the circumstances involved in those cases.

█ In the factual situation before us, we must consider the application of two statutes, the Civil Service Retirement Act and Section 11 of the APA. Both authorize proceedings which, from the agency standpoint, are designed to accomplish the same objective, namely, the removal of the employee because of his physical incapacity to perform the duties of his office. Mr. Benton had sufficient service to entitle him to the benefits of the Retirement Act. However, for the reasons stated in Part IV and elsewhere in this opinion, he could not be separated under that Act except in a proceeding conforming to the requirements of Section 11 of the APA. As this court held in dealing with a somewhat similar situation, the two acts should be construed as being in *pari materia* and should be read together. Kleinfelter v. United States, 162 Ct.Cl. 88, 318 F.2d 929 (1963). Accordingly, we hold that the Commission had the right to retire Mr. Benton if it decided that he was totally disabled but the proceedings for the determination of such total disability must be conducted in conformity with Sections 7, 8 and 11 of the APA, with the right to judicial review of the Commission's decision. A final decision that Mr. Benton was totally disabled would constitute good cause, within the meaning of Section 11 of the APA, for separating him from his position and retiring him under the Retirement Act.

### VI

We emphasize that our decision does not rest solely on any one of the grounds which is covered by the foregoing discussion. When taken together, however, we find that they tilt the balance in plaintiff's favor and that she is entitled to recover. Accordingly, plaintiff's motion for summary judgment is granted, defendant's motion for summary judgment is denied, and the case is remanded to the Trial Division for determination of the amount of the recovery.

7. For example, in Ramspeck v. Federal Trial Examiners Conference, 345 U.S. 128, 143, 73 S.Ct. 570, 97 L.Ed. 872 (1953), the Supreme Court stated that a reduction in force (which is not a disciplinary type of action) would be a removal for good cause within Section 11 of the APA.