**STILLMAN v. UNITED STATES.**

No. 49597.

United States Court of Claims.

Dec. 1, 1953.

Samuel T. Ansell, Jr., Washington, D. C., for plaintiff. Ansell & Ansell, Washington, D. C., were on the brief.

Paris T. Houston, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

JONES, Chief Judge.

This is a suit for the difference in the pay and allowances of a captain and a second lieutenant from February 3, 1942, to May 5, 1942, and the difference between the pay and allowances of a captain and a first lieutenant from May 6, 1942, through February 14, 1945.

Gerald C. Stillman, deceased, accepted appointment as a second lieutenant in the Field Artillery Reserve on June 7, 1941, entering on active duty June 11, 1941. He served in that rank and in the grade of first lieutenant from May 6, 1942, until his death on September 7, 1944, as a prisoner of war of the Japanese government.

The decedent was serving as a reconnaissance officer attached to Battery A, 23rd Field Artillery, in the Philippine Islands at the time of the invasion of the islands in December 1941.

In January 1942 a Provisional Battalion comprising three batteries, A, C, and D, under the command of Major Fitch, fought its way out of Japanese encirclement of the defendant's First Philippine Army Division at Moron. Major Fitch assigned 100 raw troops to the command of the decedent and charged him with the duty of evacuating the wounded through the enemy lines. The mission was accomplished with such courage and tenacity on the part of decedent that Major Fitch recommended that he be awarded the Congressional Medal of Honor. On December 10, 1945, he was awarded, posthumously, the Distinguished Service Cross.

After the withdrawal from Moron had been completed, the Provisional Battalion was placed in the First Corps sector of the final defensive lines across the Bataan Peninsula. About February 2, 1942, Battery C, a part of the Provisional Bat-

talion, was subjected to an air attack. The battery commander, a captain, was killed, one lieutenant was wounded and evacuated, the other lieutenant deserted, and Battery C was left without a commissioned officer. Major Fitch verbally assigned decedent, then attached to Battery A, to command Battery C. This assignment was confirmed by written order of Major Fitch, delivered to decedent and to the Major's immediate superior officer, Colonel Richard Hunter. The decedent was not the senior officer available in the Battalion, but Major Fitch selected him because of demonstrated ability and relative availability.

All of the administrative records of the Provisional Battalion were lost during the Battle of Bataan.

From about February 3, 1942, the decedent commanded Battery C in constant engagement with the enemy forces until the general surrender of the defendant's forces on Bataan to the Japanese Army on April 9, 1942, when he became a prisoner of war.

At all times pertinent to this case the appropriate grade for commander of a battery was that of captain. However, the assignment of the decedent to the command of Battery C was not made by an officer having authority by direction of the President under Article of War 119, 10 U.S.C. § 1591,[1] unless implied in the circumstances and conditions shown to exist, or unless the service under fire in the flaming section continuously for two months and nine days without question or repudiation on the part of those having authority constituted acceptance and confirmation of the action taken.

In February 1947 plaintiff made inquiry of the Judge Advocate General whether decedent was entitled to the pay and allowances of a captain during the period in question. The reply of the Department was in pertinent part as follows:

"In general, in order to entitle an officer to pay above that pertaining to his grade, under the act quoted above [section 7, act of 26 April 1898, 30 Stat. 365; 10 U.S.C. § 694], these four conditions must be fulfilled:

"(a) The service must be in time of war.

"(b) The officer must be serving with troops operating against an enemy.

"(c) The officer must exercise a command above that pertaining to his grade, and appropriate to an officer of a higher grade.

"(d) The exercise of such higher command must be under an assignment in orders issued by competent authority prior to the exercise of such higher command.

"In view of the factual questions presented, your letter has been forwarded to the Adjutant General for such action as may be appropriate."

On January 7, 1948, the Adjutant General wrote plaintiff from which letter we quote the following:

"It is the considered opinion of the Department of the Army that there is no evidence to indicate that Lieutenant Stillman exercised under assignment in orders issued by competent authority (i. e., issued by direction of the President under authority of Article of War 119), a command above that pertaining to his grade, within the meaning of the Act of 26 April 1898. Accordingly, on the basis of this opinion, he was not entitled to additional pay during the period in question."

Did the decedent exercise the command of a Captain of Artillery under orders issued by competent authority from February 3, 1942, until the date of his death?

Section 7 of the act approved April 26, 1898, 30 Stat. 365, 10 U.S.C.A. § 694, provides:

"That in time of war every officer serving with troops operating against an enemy who shall exercise, under assignment in orders issued

1. See 10 U.S.C.A. § 507.

by competent authority, a command above that pertaining to his grade, shall be entitled to receive the pay and allowances of the grade appropriate to the command so exercised: * * * ."

Manifestly the first three conditions were met. The issue turns on the fourth.

Paragraph 7, A.R. 600–20, in force at the time, is as follows:

"*Absence or disability of all officers of a unit.*

In the event of the death, disability, or absence of all the officers of a unit, the post or other commander will assign an officer, preferably from the organization to which the unit belongs, to its command."

This seems to fit decedent's position like a glove. Major Fitch was the battalion commander of the three batteries which included Battery C, decedent's unit. Decedent was ordered to command that unit United States v. Mitchell, 205 U.S. 161, 169, 27 S.Ct. 463, 51 L.Ed. 752; Humphreys v. United States, 38 Ct.Cl. 689, 692.

The Comptroller General in other cases in construing the expression "under orders issued by competent authority" has stated "the form of the order is not material", but whether oral or written "it must be an order which the subordinate officer was bound to obey."

Does anyone doubt that decedent, under the conditions then prevailing on Bataan was bound to carry out the assignment of Major Fitch, or that he could have been court-martialled and shot had he declined to do his duty?

We think the act of April 26, 1898, supra, rather than Article of War 119, supra, is applicable here. The act applies where troops are operating against an enemy. It simply provides that the assignment should be "by competent authority." Certainly the commander in the field, under battle conditions is com-

petent authority. If General Douglas MacArthur, in the cooped-up conditions that then prevailed on that portion of the earth which trembled under terrific bombardment, did not know of this heroic soldier's assignment for two months and nine days then he is not the great operative military chieftain that most of us think he is. The same is true of General Wainwright who succeeded him.

They must have known. And since they did not repudiate the assignment, they ratified and confirmed it by permitting it to stand. Certainly they were competent authorities under the terms of the act of 1898, which was evidently intended to be applicable under battle-torn conditions. Furthermore, under such conditions, there was little time for paper work, and communication with Washington was practically non-existent, especially for several weeks prior to the surrender.

Decedent was given, posthumously, the Distinguished Service Cross for heroic conduct in a continuing battle in which he expended his life's energies. True, it was a losing battle, but it was a delaying action which gave an unprepared nation valuable time in which to gird itself for the struggle to come. In all the circumstances of this case, the defense is a very technical one, amounting almost to a legalism.

When Article of War 119 and the act of 1898 are laid alongside and properly analyzed even the technical defense disappears. By every tenet of justice and fair play that we have known from our youth all the way, the pay and allowances of a captain should be granted. In addition it is in accord with the applicable law.

The plaintiff is entitled to recover the sum of $1,346.29.

It is so ordered.

MADDEN, WHITAKER and LITTLETON, JJ., concur.