**Robert T. MERRILL**

v.

**The UNITED STATES.**

**No. 95–63.**

United States Court of Claims.

Nov. 13, 1964.

---

William B. Harman, Jr., Washington, D. C., for plaintiff. David W. Kendall, Detroit, Mich., of counsel.

William L. Davis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, LARAMORE, DAVIS and COLLINS, Judges, and WHITAKER, Senior Judge.

DAVIS, Judge:

Beginning in 1906 as a midshipman, plaintiff served actively in the Navy until November 1919 when he entered the inactive naval reserve. He left the naval reserve in November 1923. In April 1942 he became a lieutenant commander in the Coast Guard reserve and served actively until 1950. Because he was required to leave the reserve when he reached 62 (on July 20, 1950), he applied in that year for retirement under what is now 10 U.S.C. § 6323 (then Section 6 of the Act of February 21, 1946, 60 Stat. 26, 27, made applicable to the Coast Guard Reserve by 14 U.S.C. § 755(e)).[1] That section authorizes the President, in his discretion, to retire an officer who has 20 years of active service of which at least 10 have been as a commissioned officer. Plaintiff fulfilled these requirements (counting his midshipman service) and was retired as of July 1, 1950.

Three months later, plaintiff joined the State Department as a civilian employee, continuing to receive his military retired pay. On July 31, 1961, when he attained the required 15 years of civilian service,[2] he was mandatorily retired from civilian service as over 70. Since he was not permitted to count the times of his active military service in computing both his civil service annuity and his military retired pay under 10 U.S.C. § 6323, he gave up his right to the military pay, under that provision, after he left the State Department. His military service was included in the calculation of his civilian retirement.

This case arises because, in 1961, plaintiff was twice recalled to active duty in the Coast Guard, for a total period of 2 months and 25 days (February 20, 1961–March 30, 1961; April 19, 1961–June 2, 1961). After this service, he applied, unsuccessfully, to the Coast Guard Correction Board for retirement, not under 10 U.S.C. § 6323 which had been the basis for his military retirement in 1950, but under 10 U.S.C. § 1331 (formerly contained in Title III, Public Law 810, Act of June 29, 1948, 62 Stat. 1081, 1087). Section 1331 applies to servicemen who are at least 60 and have performed at least 20 years of active and inactive service, and who are:

"not entitled, under any other provision of law, to retired pay from an armed force or retainer pay as a

1. In pertinent part, Section 6323 provides:
"(a) An officer of the Navy or the Marine Corps who applies for retirement after completing more than 20 years of active service, of which at least 10 years was service as a commissioned officer, may, in the discretion of the President, be retired on the first day of any month designated by the President.
"(b) For the purposes of this section—
"(1) an officer's years of active service are computed by adding all his active service in the armed forces; and

"(2) his years of service as a commissioned officer are computed by adding all his active service in the armed forces under permanent or temporary appointments in grades above warrant officer, W-1 * * *."

2. He had earlier been a federal civilian employee, with the United States Shipping Board and the Emergency Fleet Corporation, from August 3, 1921, through October 31, 1925.

member of the Fleet Reserve or the Fleet Marine Corps Reserve." [3]

Plaintiff's position is that his release from active duty in 1961 was a re-retirement (under Carhart v. United States, 146 Ct.Cl. 479 (1959)) enabling him to qualify, for the first time,[4] for the benefits of section 1331, since on that date he was over 60 and had 20 years of service (including the 1961 duty). It would be advantageous for him to take retired pay under that provision, instead of section 6323 which he had formerly utilized, because section 1331, unlike the other section, permits him to credit concurrent periods of civilian and military service for military retired pay as well as the civil service annuity. See 10 U.S.C. § 1336. He would be able to obtain and retain both in full measure.

The major stumbling block to recovery is the paragraph of section 1331 which excludes from its benefits any serviceman "entitled, under any other provision of law, to retired pay from an armed force or retainer pay as a member of the Fleet Reserve or the Fleet Marine Corps Reserve." Concededly, plaintiff was still qualified in 1961 for retirement pay under section 6323 (though it would have reduced his civil service annuity). But he points out that retirement under section 6323 is discretionary with the President. The argument is that the term "entitled", in the exclusionary proviso of section 1331, does not refer to a retirement which is discretionary or conditional with the Executive, but only to one which is unconditionally granted by law as a matter of right.

Though "entitled" often has that meaning, it is not the only permissible reading. In the ordinary use of English, "entitled" can also mean "qualified", "eligible", "fit", or "suitable." See Webster's New Int. Dict., 2d ed., under "entitle"; Roget's International Thesaurus, pars. 635.9, 635.21 (Crowell Co., 3d ed.). In legal parlance, the same type of usage can be found. See Black's Law Dict., 4th ed., p. 626; State v. Jansen, 207 Minn. 250, 290 N.W. 557, 559 (1940); Litchfield v. Retirement Board of Middlesex County, 303 Mass. 473, 21 N.E.2d 973, 974 (1939). The precise meaning of the term, as it appears in a particular statute, regulation, or document, must be drawn from the context, structure, and purpose of the provision under scrutiny.

The retirement system established by section 1331 was created in 1948, as Title III of Public Law 810, for non-regular and reserve service.[5] "Title III established a new basis for payment of retirement pay for longevity to members and former members of reserve components, credit being authorized for active duty together with limited credit for service other than active duty. It was a statute to provide for retirement pay at

---

3. The material parts of Section 1331 read as follows:

"(a) Except as provided in subsection (c), a person is entitled, upon application, to retired pay computed under section 1401 of this title, if—

"(1) he is at least 60 years of age;

"(2) he has performed at least 20 years of service computed under section 1332 of this title;

\*　　\*　　\*　　\*　　\*

"(4) he is not entitled, under any other provision of law, to retired pay from an armed force or retainer pay as a member of the Fleet Reserve or the Fleet Marine Corps Reserve."

4. In 1950, the Coast Guard had informed plaintiff that he failed to qualify for retirement pay under § 1331 because his midshipman service could not be counted in making up the 20 years of service necessary under that provision. Without the midshipman years, his total service (active and inactive) amounted at that time only to 19 years, 9 months, and 20 days. At the oral argument the questions arose whether this information (that midshipman service must be excluded) was erroneous (in the light of subsequent decisions of this court), and whether plaintiff now based any claim on the error (if such it was). Plaintiff has since formally told us, in writing, that he does not believe that the information was erroneous and that he has not and does not base any claim on the advice given him in 1950. His sole contention is that he was entitled to utilize section 1331 after his 1961 active service.

5. In Title 10 of the U.S.Code, Section 1331 now appears in Chapter 67, "Retired Pay for Non-Regular Service."

a specified age to those members and former members of reserve components who had certain service and who theretofore were not eligible for retirement except for disability." 41 Comp.Gen. 458, 459 (1962). The primary mechanism was to grant retirement pay to reserve and National Guard servicemen who accumulated sufficient points from drills, annual periods of training, military courses, and similar reserve-type activities. The purpose was "to provide an inducement to members of reserve components to remain active in the Reserve over a long period of time thereby providing a better trained and more ready Reserve to meet the needs of our national defense structure." Ibid. One of the specific inducements to these part-time servicemen (many of whom worked for the Federal Government) was to allow them to count concurrent periods of federal civilian service and of military duty for both civilian and military retirement.

For career servicemen and those blanketed by other schemes of military retirement, there was no need for this new system. They had their own coverage. Moreover, the recognition of overlapping civilian and military service for both purposes could create discrimination in the treatment of already-covered servicemen if some were allowed to choose the new plan instead of the retired pay otherwise available. Under section 6323 plaintiff and his fellow officers cannot count such concurrent periods for both civilian and military retirement; however, if he were allowed to come under section 1331 he would have to be permitted to do so. These considerations moved Congress, we think, to provide in 1948 that Title III "shall not be applicable to any officer or enlisted person of the Regular or reserve components of the Army, Navy, Air Force, or Marine Corps who, prior to or subsequent to the date of enactment of this title, is entitled to receive, or is re-

ceiving under any other provision of law, retired pay for military or naval service, including retainer pay as a transferred member of the Fleet Reserve." 62 Stat. 1089. This is a very broad exclusion which is now compressed, in section 1331(a) (4), supra, to the condition that the serviceman "is not entitled, under any other provision of law, to retired pay from an armed force * *."

In the light of the goals of section 1331 and of the special retirement system it establishes, we believe that Congress desired to exclude all those able to obtain military retirement under any other statute. In "enacting Title III, the Congress did not intend to enhance the rights of persons on a retired list or others who might become entitled to retired pay under some other provisions of law, or to provide an alternate method of computing retired pay if circumstances should make a change advantageous." 41 Comp. Gen., supra, 458, 460.[6] In particular, there is no indication of a Congressional purpose to distinguish between retirement pay to which a man has an unconditional right and the "discretionary" retirement pay for which a companion is eligible and which is granted him (though it could have been denied). In the context of section 1331 we can see no end which would be served by such a distinction. It fits the legislative design, therefore, to read "not entitled" as "not qualified", "not eligible", or, more precisely, "not able to obtain." Servicemen like plaintiff who can obtain other retirement pay are excluded from claiming under section 1331.

We are not alone in construing "entitled to", in reference to retirement, as including retirement which is conditional and not automatic. In Litchfield v. Retirement Board of Middlesex County, 303 Mass. 473, 21 N.E.2d 973 (1939), supra, the Supreme Judicial Court interpreted a statute excluding from certain retirement systems a person "entitled to a

---

6. At the hearings on the 1948 Act, a specific proposal was made to allow any serviceman to elect to receive retired pay under the new Title III, if he waived receipt of the other retired pay to which he was entitled or was receiving. This proposal was not accepted. See 41 Comp. Gen., supra, 458, 459–60.

pension from any county for any reason." Court officers, wishing to be excluded, claimed that they were so "entitled" under another system. Before receiving compensation under the other plan, these individuals had yet to perform faithful service for a number of years and that fact, together with their incapacity for further service, had then to be established to the satisfaction of the sheriff, subject to judicial approval. Nevertheless, the decision held them "entitled to a pension", within the meaning of that statute, and therefore excluded from the system they wished to reject. In adopting that interpretation, the court relied largely on the purposes and development of the particular legislation. We do the same here.

Plaintiff is not entitled to recover. Defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is denied and his petition is dismissed.