Richard J. SELMAN

v.

The UNITED STATES.

George S. H. SHARRATT, Jr.

v.

The UNITED STATES.

Nos. 421–72, 422–72.

United States Court of Claims.

June 19, 1974.

Penrose Lucas Albright, Arlington, Va., for plaintiff; J. Nelson Happy, Kansas City, Mo., attorney of record for plaintiff; James M. Haviland, Dietrich, Davis, Burrell, Dicus & Rowlands, Kansas City, Mo., of counsel.

Rose E. Adewale-Mendes, Washington, D.C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, Washington, D.C., for defendant.

Before SKELTON, KASHIWA and KUNZIG, Judges.

KUNZIG, Judge.

This is a consolidated military pay suit in which plaintiffs claim they are entitled to rear admiral (lower half) pay for their periods of service as Assistant Judge Advocates General (AJAGs) of the Navy, while occupying only the rank of captain. We hold they are so entitled.

Because of its *de minimis* factual background, involving no significant dispute, the case reduces to one of virtually abstract statutory construction. By Navy Bureau of Personnel orders, plaintiffs Sharratt and Selman were ordered in 1968 to report for duty as Navy AJAGs. They served in this capacity for roughly 26 and 44 months, respectively.[1] Despite exemplary service by both, neither plaintiff was advanced to the rank of rear admiral, which the role of AJAG normally calls for. This was apparently due to a nonstatutory limit on the number of Naval flag officers, imposed by the Senate Armed Forces Committee (the Stennis Ceiling).

During the relevant periods of service, plaintiffs drew the basic pay and allowances of Navy captains. On June 29, 1972, they filed administrative claims for the relevant periods of service, requesting the difference between such pay and allowances and those to which a rear admiral (lower half) is entitled.[2] Plaintiffs' requests were based on 37 U.S.C. § 202(*l*) [hereinafter section 202] which reads:

> Unless appointed to a higher grade under another provision of law, an officer of the Navy or Marine Corps serving as Assistant Judge Advocate General of the Navy is entitled to the basic pay of a rear admiral (lower half) or brigadier general, as appropriate.

On July 25, 1972, the Navy denied the requests in accordance with opinion B–168691 of the Comptroller General of the United States, dated July 13, 1970. 50 Comp. Gen. 22. The Comptroller had ruled that section 202 had to be read in conjunction with 10 U.S.C. § 5149(b) [hereinafter section 5149], which provides in pertinent part:

> An officer of the Judge Advocate General's Corps who has the qualifications prescribed for the Judge Advocate General in section 5148(b) of this title may be *detailed* as Assistant Judge Advocate General of the Navy. While so serving he is entitled to the rank and grade of rear admiral (lower half), unless entitled to a higher rank or grade under another provision of law [emphasis added].

According to this view, only officers *detailed* as AJAGs and bearing the qualifications of a rear admiral were eligible for the higher pay. Plaintiffs, defendant argues, were not formally detailed but only "administratively assigned" as AJAGs and, hence, do not qualify for section 202 pay above rank.

Plaintiffs' challenge of this view is before the court on cross-motions for summary judgment. We hold for plaintiffs.[3]

Defendant offers a basically three-pronged defense to plaintiffs' statutory assertion: (1) that section 202 must be read in conjunction with section 5149, since both provisions were contained in the same public law; (2) that proper discernment of the meaning of section 202 requires consideration of the legislative history; and (3) that acceptance of plaintiffs' construction of section 202 would effectively constitute "judicial promotion" of plaintiffs. We find none of these arguments of merit.

---

1. Plaintiffs' respective tenures as AJAGs will be referred to hereinafter simply as "the relevant periods of service."

2. 37 U.S.C. § 401 et seq. (1970) sets forth the various allowances to which persons serving in the uniformed services are entitled. Such allowances vary with the rank of the individual concerned. For expediency sake, the term "pay" as hereinafter used will refer to the appropriate pay and allowances.

3. Because of the result reached on the merits, we find it unnecessary to consider plaintiffs' motion to strike certain affidavits contained in defendant's briefs.

■ At the outset, we conclude this case can be decided on a simple, fundamental principle of statutory construction: a clear and unambiguous statute speaks for itself. This court has long recognized that, while judicial tribunals may go beyond the language contained in a statute to ascertain its meaning, they must be careful in departing from statutory terms in order to avoid doing violence to them. Crawford v. United States, 376 F.2d 266, 272, 179 Ct.Cl. 128, 138 (1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831 (1968). Thus, the unambiguous wording of a statute shall be given its plain and commonly understood meaning. Benton v. United States, 488 F.2d 1017, 1020, 203 Ct.Cl. —, — (1973); Ricker v. United States, 396 F.2d 454, 456, 184 Ct.Cl. 402, 406 (1968); Prudential Insurance Co. v. United States, 319 F.2d 161, 166, 162 Ct.Cl. 55, 65 (1963).

■ Section 202 obviously directs that an officer of the Navy, while serving as AJAG, is entitled to the pay of a rear admiral (lower half). Contrary to defendant's contention, nothing could be more clearly stated. Because plaintiffs during the relevant periods were Navy officers who undisputedly "served" as AJAGs, regardless of the means by which they were named to such positions, they are entitled to judgment on their claims for back pay as a matter of law.

In an effort to inject ambiguity into the otherwise clear language of section 202, defendant points to the fact that the section was adopted by Congress as part of a larger legislative package which included the provision establishing the office of AJAG, now codified as section 5149. Act of Dec. 8, 1967, Pub. L. 90–179, 81 Stat. 545, 546.[4] We reject the suggestion that a tedious search for inconsistency or ambiguity is warranted where the plain meaning of a statute is

evident on its face. In any case, the legislative package passed by Congress as Public Law 90–179 reveals no suggestion that the two provisions here under examination are to be read together. The plain fact is that section 5149 of the bill "to establish a Judge Advocate General's Corps in the Navy and for other purposes" relates to *organization* and *grade*, while section 202 thereof relates to *pay*. While the former establishes the position of AJAG and the rank to which a person holding the position is entitled, the latter permits any officer "serving" in the position to receive flag-level pay.

By making the requirement for a formal "detail" as Navy AJAG (contained in section 5149) a condition precedent to eligibility for the pay benefit of section 202, defendant would have us limit the latter section by terms extraneous to it. Indeed, such a construction would work to "delete or ignore the clear language" of section 202 as a separate provision with life of its own, an undertaking which this court traditionally avoids for fear of encroaching on the province of the legislature. Ricker v. United States, *supra*; Childs v. United States, 118 F. Supp. 364, 365, 127 Ct.Cl. 425, 428 (1954).

Nor is defendant's argument strengthened in this regard by citation of a Naval regulation making formal "detail" to the officer of AJAG a condition precedent to eligibility for section 202 pay above rank. Defense Department Military Pay Manual, § 10214(b)(2). To entertain such an argument would be to allow defendant to hoist itself by its own bootstraps.

It is settled administrative law that,

[w]hen faced with a problem of statutory construction, [the courts show] great deference to the interpretation given the statute by the officers or

---

4. 37 U.S.C. § 202(*l*) (1970) was originally designated in Pub.L. 90–179 as section 202(k). Pub.L. 90–623, 82 Stat. 1314, effective Oct. 22, 1968 (during the relevant periods of service) redesignated section 202(k) as section 202(*l*) without altering the content of that provision.

agency charged with its adminstration.

Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). *See* Cornman v. United States, 409 F.2d 230, 233, 187 Ct.Cl. 486, 492, cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 424 (1969). The regulation here under examination, however, attempts to qualify the plain meaning of its own source, an unambiguous statute, which *it may not subvert*. Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission, 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); Fix v. United States, 368 F.2d 609, 614, 177 Ct.Cl. 369, 377 (1966). Nor does defendant cite the court to any express Congressional delegation of authority to the Navy to interpret section 202 by regulation. Thus, an important element of the *Udall* test is here lacking. Defendant's reliance on the mysterious appearance of the magical term, "detailed," in its own regulation, consequently, appears too strong.

Doubt also exists as to another important element: consistency of the statute's administrative interpretation. *See* Udall v. Tallman, *supra,* 380 U.S. at 17, 85 S.Ct. 792, 13 L.Ed.2d 616; Ganse v. United States, 376 F.2d 900, 904, 180 Ct.Cl. 183, 189 (1967). In the face of the Defense Department Military Pay Manual section on which defendant relies, the Judge Advocate General of the Navy himself recommended to the Comptroller General adoption of plaintiffs' construction of section 202. The Judge Advocate General took the position that the bill establishing a Navy JAG Corps provided for *permissive* assignment of flag rank personnel as AJAGs in section

5149, but made *mandatory* pay to such personnel at the flag rank level.[5] Thus,

> [a]ny officer *appointed* or *detailed* to duty as an AJAG under 10 U.S.C. 5149 subsequent to the 8 December 1967 effective date of Public Law 90-179 must receive at least the pay of a rear admiral (lower half) or brigadier general, as appropriate. 37 U.S.C. 202(*l*).

Letter from Navy Judge Advocate General Joseph B. McDevitt to the Director, Military Pay System, Nov. 5, 1969. *See also* Memorandum from Acting Navy Judge Advocate General D. D. Chapman to John T. Burns, Associate General Counsel, General Accounting Office, May 27, 1970.

The court has in the past chosen not to follow an administrative interpretation when it conflicts with a more sensible reading of the statute's plain meaning. Tasker v. United States, 178 Ct.Cl. 56, 59 (1967). We must here conclude that defendant's offer of administrative interpretation of section 202 is entitled to little weight.

In a further effort to entice the court to look beyond the clear wording of section 202, defendant invokes the doctrine of United States v. American Trucking Association, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), for the proposition that "no rule of law forbids the use of legislative history as an aid to statutory construction, even if the words of the statute appear clear on a superficial examination." *See,* Lionberger v. United States, 371 F.2d 831, 178 Ct.Cl. 151, cert. denied, 389 U.S. 844, 88 S.Ct. 91, 19 L.Ed.2d 110 (1967); Fox v. United States, 283 F.2d 951, 151 Ct.Cl. 611, (1960). Defendant, however, paraphrases too liberally the statutory con-

5. Defendant advances the argument that Congress, through use of the term "entitled" in section 202, intended the pay above rank of that provision to be permissive rather than mandatory. Merrill v. United States, 338 F.2d 372, 374, 168 Ct.Cl. 1, 5 (1964). As stated in *Merrill,* however, the precise meaning of the term "entitled" must be

drawn from the context, structure, and purpose of the particular statute under scrutiny. Here, we agree with the Navy Judge Advocate General that the contrast in purpose between section 202 and section 5149 points to a mandatory connotation for the term.

struction lesson in *American Trucking Association*. Speaking for the Court, Mr. Justice Reed there said:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. * * * When that meaning has led to *absurd or futile results*, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an *unreasonable* one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of the words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination" [emphasis added].

310 U.S. at 543, 60 S.Ct. at 1063. In compliance with this directive, this court has utilized legislative history as an aid in construing an otherwise unambiguous statute only when such history offers "clear and compelling support" for an interpretation different from that of the ordinary meaning of the law's words. Benton v. United States, supra at 488 F.2d at 1020, 203 Ct.Cl. at ——. Thus, Fox v. United States, *supra,* on which defendant relies, involved a statute in which an unreasonable result would have been reached had its literal terms been applied.

■ Under this formula, we find no reason to look beyond the plain words of section 202. The result they dictate, pay above rank for plaintiffs, is neither *absurd* nor *unreasonable*. It is true that a Government employee is normally entitled only to the salary of the grade to which he is appointed and serves. Urbina v. United States, 428 F.2d 1280, 1285, 192 Ct.Cl. 875, 882 (1970); Price v. United States, 80 F.Supp. 542, 543, 112 Ct.Cl. 198, 200 (1948); Brech v. Immigration & Naturalization Service, 362

F.Supp. 914, 917 (S.D.N.Y.1973). Congress retains the prerogative, however, to accord, through specific statutory authorization for specialized service, entitlement to pay above that otherwise called for by rank. Such entitlement has been enforced by this court more than once before. Belsky v. United States, 290 F.2d 593, 154 Ct.Cl. 206 (1961) (minimum pay for drafted doctor); Stillman v. United States, 116 F. Supp. 622, 126 Ct.Cl. 750 (1953) (minimum pay for officer in combat command). Other examples of such statutory grace may also be cited. *See e. g.,* 37 U.S.C. § 207(a), (c) (1970) (entitling leaders of Navy and Army bands to at least basic pay of lieutenant or captain, as appropriate, without regard to actual rank).

Moreover, even were we to accede to defendant's urgings to consider the relevant statutory history, we would find that it hurts rather than helps defendant's cause. The underlying purpose of Public Law 90–179 was to establish incentives deemed necessary by Congress for the creation of a corps of qualified uniformed lawyers to satisfy the rapidly expanding needs of the Navy for quality legal services. 2 U.S.Code Cong. & Admin.News 1967, pp. 2113, 2115 (1967). The ability of professional staff officers to (1) move into the higher ranks of the Navy and (2) achieve higher pay were two of the prime incentives which could be legislatively provided toward this goal.

■ Because of the Stennis Ceiling, however, movement into higher Navy ranks was restricted. The incentive of higher salary still remained, of course, and it is for this purpose that section 202 was adopted as a separate pay provision containing no reference to rank. In offering the amendment, ultimately adopted, to section 5149 making formal detailing as AJAG permissive rather than mandatory, Senator Ervin, who guided Public Law 90–179 through the Senate, commented:

> After the committee's action the line officers of the Navy and the Marine

Corps protested their inability to accommodate an additional uniformed lawyer as a rear admiral or a brigadier general and I have agreed to sponsor an amendment that establishes the two new statutory positions of Assistant Judge Advocate General of the Navy on a permissive basis instead of requiring that they be filled by a flag officer of the Navy or a general officer of the Marine Corps. If those in power in the Navy and the Marine Corps are later persuaded that additional flag or general officer positions should be filled by uniformed lawyers, the authority for flag and general officer grade for the occupants of these offices will exist.

My personal view is that the powers that be in the Navy and the Marine Corps are being somewhat shortsighted in their unwillingness to share the flag and general officer positions with uniformed lawyers. This unwillingness will undoubtedly make it more difficult for the Navy to attract and retain an adequate number of uniformed lawyers with the desired competence and qualifications. Hence, I hope the Navy may alter its present position and share its prescribed flag and general officer positions with uniformed lawyers.

113 Cong.Rec. 32764 (1967).[6] *See also* 113 Cong.Rec. 33209 (1967) (Remarks of Congressman Philbin, chief sponsor of the bill in the House).

Defendant has carefully sidestepped the ceiling issue in its analysis of congressional intent underlying the statutes here in question. Yet, understanding of the ceiling problem explains the existence of section 202 in the Navy JAG bill of 1970. What other purpose could

it serve than as an economic incentive to those legal officers assigned to duty as AJAGs without benefit of the flag-level rank which normally comes with that position? If an officer were, in fact, a rear admiral, he would be entitled as a matter of course to receive flag pay. 37 U.S.C. §§ 201(a), 203(a) (1970). We therefore conclude that the relevant legislative history supports the unambiguous meaning of section 202 on its face and bolsters the cause of plaintiffs, not defendant.

Finally, defendant contends the granting of rear admiral's pay to plaintiffs would be tantamount to "judicial promotion" of military officers, an undertaking the court has repeatedly rejected. *See, e. g.,* Brenner v. United States, 202 Ct.Cl. 678, 685–686 (1973). Yet, there can patently be no "judicial promotion" when (1) the officers in question have not been advanced to a higher grade, and (2) a specific act of Congress entitles them to higher pay. In construing the clear language of such a statute, no arrogation of executive or legislative power by the court can be discerned.

In summary, having determined that the language of section 202 speaks for itself and that the appropriate legislative history only fortifies this result, we hold plaintiffs entitled to rear admiral (lower half) pay for their periods of service as Navy AJAGs.

Accordingly, plaintiffs' motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. Plaintiffs are entitled to recover back pay and allowances on their consolidated claim and judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 131(c).

---

**6.** We concur with defendant's view that the affidavit of Senator Ervin of April 14, 1970, submitted to the court by plaintiffs, may not properly be considered as part of the legislative history relevant to this case. Since no member of a legislature, outside of the legislature, is empowered to speak with authority for that body, Senator Ervin's affidavit is without evidentiary value. National School of Aeronautics, Inc. v. United States, 142 F.Supp. 933, 938, 135 Ct.Cl. 343, 351 (1956); Gardner & North Roofing and Siding Corp. v. Board of Governors of Federal Reserve System, 150 U.S.App.D.C. 329, 464 F.2d 838, 842 (1972). We have disregarded the affidavit in reaching our conclusion.