723 F.2d 877
 Sophia E. SELMAN, as Executrix of the Estate of Richard J.
Selman, Deceased, and Shirley Marie Sharratt, as
Executrix of the Estate of George S.H.
Sharratt, Jr., Deceased, Appellants,
v.
The UNITED STATES, Appellee.
 Appeal No. 83-840.
 United States Court of Appeals, Federal Circuit.
 Oct. 28, 1983.
As Amended on Denial of
Rehearing Nov. 30, 1983.
 
 Penrose Lucas Albright, Arlington, Va., argued for appellants.
 Kathleen A. Flynn, Washington, D.C., argued for appellee. With her on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner, Asst. Director, Washington, D.C.
 Before DAVIS, Circuit Judge, NICHOLS,* Senior Circuit Judge, and MILLER, Circuit Judge.
 NICHOLS, Senior Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the United States Claims Court, 1 Cl.Ct. 702 (No. 507-82C), entered March 7, 1983, dismissing the plaintiffs' complaint in response to the United States' motion for a judgment on the pleadings. We affirm.
 
 Background
 
 2
 Captain Sharratt served as Assistant Judge Advocate General of the Navy (Civil Law) from July 16, 1968, until his retirement on October 1, 1970. Captain Selman served as Assistant Judge Advocate General of the Navy (Military Law) from August 20, 1968, until May 1, 1972. He then served in another position until July 1, 1973, at which time he was placed on the Temporary Disability Retired list. His disability retirement was eventually made permanent. While serving as Assistant Judge Advocates General (AJAGs), both men held the rank of captain and were compensated on the basis of an 0-6 pay grade.
 
 
 3
 In 1972, Captains Selman and Sharratt (the captains), brought an action against the United States in the then Court of Claims. Selman v. United States, 498 F.2d 1354 (Ct.Cl.1974) (Selman I ). The captains argued that 37 U.S.C. Sec. 202(l )[1] entitled AJAGs to the basic pay of a rear admiral (lower half). The Court of Claims agreed, and raised the captains' active duty pay to the pay grade 0-7. The Court of Claims, however, did not promote Selman and Sharratt from captains to rear admirals. Selman I, 498 F.2d at 1359.
 
 
 4
 After the captains retired, they received retirement pay computed on the basis of the 0-6 pay grade of captain rather than the higher active duty pay they were awarded in Selman I. In March 1976, the captains petitioned the Board for Correction of Naval Records (board or BCNR) under 10 U.S.C. Sec. 1552 for the higher retirement pay grade, alleging that the respective Secretaries of the Navy (Secretaries) had never been given the opportunity to exercise the discretion delegated to them by the President pursuant to 10 U.S.C. Sec. 5149(b). That section grants the President the discretion to retire, with the rank and grade of rear admiral (lower half), an officer who has served as an AJAG of the Navy for more than 12 months. Since it had yet to be determined that an AJAG was entitled to the basic pay of a rear admiral (lower half) while on active duty, it appears that no one considered it necessary to give the Secretaries the opportunity to exercise the Presidential discretion when the captains retired.
 
 
 5
 On May 29, 1981, the board formally acted. It agreed with the captains that the Secretaries had never been given the opportunity to exercise the delegated Presidential discretion. Rather than itself reach any conclusion as to the merits, however, the board wrote to the current Secretary that the most appropriate remedial action was for him to decide the captains' cases himself, nunc pro tunc. (The record is unclear as to whether the board asked the Secretary to make a record correction under 10 U.S.C. Sec. 1552 or whether the board thought the Secretary was acting under the original authority granted him by 10 U.S.C. Sec. 5149(b).) The Assistant Secretary of the Navy, Manpower and Reserve Affairs, summarily denied the captains' petitions on July 16, 1982. The captains filed suit in the then United States Court of Claims on September 30, 1982. Jurisdiction was transferred, effective October 1, 1982, to the new United States Claims Court. The Claims Court granted the United States' motion for a judgment on the pleadings and dismissed the complaint. This appeal followed.
 
 Opinion
 
 6
 The captains advance two separate legal theories to support their claims. First, they allege that the board's actions were arbitrary and capricious. The captains' argument is premised on their belief that the BCNR should have promoted them if it found that the captains would have been promoted when they retired. The captains argue in other words, that the only authority present here is that of the BCNR to act under 10 U.S.C. Sec. 1552 to correct an error which arose at the time the captains retired.
 
 
 7
 The second theory which the captains propound is that the statutes under which their retirement pay is calculated require that they receive retired pay based on the highest pay received while on active duty. Under this theory, board action under Sec. 1552 is not required. Since they received the pay of a rear admiral (lower half), the captains argue, they are now entitled to retired pay based on that rate. We consider both theories in order.
 
 
 8
 * The United States argues that the Claims Court has no jurisdiction to review a purely discretionary action taken by the Secretary of the Navy pursuant to 10 U.S.C. Sec. 5149(b). Section 5149(b) grants the President the authority to use his discretion to retire an officer, who has served as an AJAG for more than 12 months, with the rank and grade of rear admiral (lower half). The pertinent part of that section provides:
 
 
 9
 An officer who is retired while serving as Assistant Judge Advocate General of the Navy under this subdivision or who, after serving at least twelve months as Assistant Judge Advocate General of the Navy, is retired after completion of that service while serving in a lower rank or grade, may, in the discretion of the President, be retired with the rank and grade of rear admiral (lower half). If he is retired as a rear admiral, he is entitled to retired pay in the lower half of that grade, unless entitled to higher pay under another provision of the law.
 
 
 10
 [10 U.S.C. Sec. 5149(b).]
 
 
 11
 The President has delegated the authority created by this section to the Office of the Secretary of the Navy.
 
 
 12
 The government argues that no purely discretionary act by the Secretary can be reviewed under Sec. 5149(b), no matter how arbitrary or capricious. We decline the opportunity to decide the question here since we find the Secretary's action, or decision not to act, was not made pursuant to the discretionary authority granted in section 5149(b), but instead, pursuant to 10 U.S.C. Sec. 1552. Section 1552 provides, in pertinent part:
 
 
 13
 The Secretary of a military department, * * * acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.
 
 
 14
 [10 U.S.C. Sec. 1552(a).]
 
 
 15
 Since it was through the BCNR that the Secretary acted in this case, we hold that the Claims Court did have jurisdiction. We are unable to find, however, that either the BCNR or the Secretary acting through the BCNR engaged in any arbitrary or capricious action. There is, therefore, no need to remand.
 
 
 16
 The BCNR is established, and its powers delineated, by 32 C.F.R. Secs. 723.1-.11 (1982). The board has the authority to consider all applications before it for the purpose of determining the existence of an error or an injustice. In appropriate circumstances, it can make recommendations to the Secretary. 32 C.F.R. Sec. 723.2(b). The board is directed to prepare a record when its deliberations are complete. 32 C.F.R. Sec. 723.6(c). The board may, within this record, make findings, conclusions, and recommendations. Id. The BCNR may also take final action on behalf of the Secretary in specific enumerated circumstances. 32 C.F.R. Sec. 723.6(e). There is no requirement that the BCNR must take final action in any situation, however. Therefore, it was entirely proper for the BCNR to merely pass the record to the Secretary so that he could determine the appropriate action.
 
 
 17
 The captains try to persuade us that the BCNR erred in not making findings to the effect that the Secretaries of the Navy at the time of the captains' retirements would have retired them with the rank of rear admiral and the pay grade of 0-7. The BCNR did find an error or injustice in the failure to pass on the question on the dates of retirement, but it refused to find how the then Secretaries would have decided if the issue of retirement rank had been presented to them for decision, as it should have been. The captains point out to us letters submitted to the board from former Secretaries of the Navy, and now Senators, John Warner and John Chafee, to the effect that they would have promoted the captains pursuant to the authority granted to them if they had been apprised of section 5149(b) when the captains retired. We cannot hold that the board's failure to make the findings is arbitrary or capricious, however. There was sufficient contrary evidence in the record so that the BCNR could reasonably have concluded otherwise. In particular, a memorandum from the Bureau of Naval Personnel points out that the former Secretaries wrote their letters without apparent consideration of all the relevant factors they would have considered while acting as Secretary.
 
 
 18
 Finally, the captains allege that the current Secretary himself acted arbitrarily and capriciously. Section 1552 requires that the Secretary act through a civilian board. That is, the Secretary must base his decision on the record as the board presents it to him. See, e.g., Weiss v. United States, 408 F.2d 416 (Ct.Cl.1969). There is no indication here that the Secretary acted on any evidence not presented to him by the board. Although the Secretary appears to have not fully met 32 C.F.R. Sec. 723.7's requirement that he accompany his action with a statement of reasons, there is a presumption of administrative regularity which the captains have failed to rebut. The Secretary had sufficient evidence before him to have reached the conclusion he did reach. In the absence of contrary evidence, we must and do suppose he adopted the reasons urged upon him in opposition to the promotions. We must therefore affirm the Secretary's decision.
 
 
 19
 It does not suffice to say that former Secretaries Warner and Chafee were fully aware of the objections and yet say they would have granted the promotions nevertheless. The fact is the only Secretary who did actually act in the premises acted in accordance with the objector's position.
 
 
 20
 We recognize that the Secretary's failure to specify his reasons for denying promotion, as 32 C.F.R. Sec. 723.7 requires, is not trivial and is in error. We do not sanction such actions. We only hold that, in this case, the error is harmless. "We do not demand sterile formality. * * * [I]f the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the reference." Environmental Defense Fund v. Environmental Protection Agency, 465 F.2d 528, 537 (D.C.Cir.1972). In this case, we are not left "completely in the dark as to the facts and evidence upon which the [Secretary] * * * based his judgment." USV Pharmaceutical Corp. v. Secretary of Health, Education & Welfare, 466 F.2d 455, 462 (D.C.Cir.1972). Rather, we discern from the record, as a whole, that the Secretary had sufficient evidence before him to reach the conclusion he did reach. We must hold, based upon our limited scope of review in the matter, that the Secretary did not act arbitrarily or capriciously.
 
 
 21
 The fact is that there can be little evidence less probative than the opinion, however well informed and however much in good faith, of a former official now out of office, as to what he would have done in office, if only the matter had been placed before him. That it was not placed before him has its own significance. Decisions of public officials are not personal ukases of despots: they are institutional products to which, if important, many minds have contributed.
 
 
 22
 The Claims Court viewed Sec. 5149(b) as delegating an authority to promote which it is itself not granted jurisdiction to exercise and which therefore cannot found a money claim in that court. This was always the view of the former Court of Claims. A recent expression of it is found in Koster v. United States, 685 F.2d 407, 413 (Ct.Cl.1982), in which earlier cases are cited. It would follow that a refusal to promote on any grounds or none, and in the absence of a clear-cut entitlement to the promotion, could not, standing alone, be the basis of a suit in the Claims Court.
 
 
 23
 Here, however, we have additional support relied on for the claim. The Secretary acted, not only in view of Sec. 5149(b), but also under 10 U.S.C. Sec. 1552. Since this provision authorizes the Secretary, "acting through" a civilian board, to correct any record when necessary to correct an error or remove an injustice, it is certainly arguable and is argued in this case, that not only an error, but an injustice as well, even a refusal to promote, can be so manifest and indubitable that a naked refusal to correct it is contrary to law, or arbitrary and capricious, and possibly therefore the foundation of a money claim in the Claims Court. This question was discussed and considered in the former Court of Claims, but never fully resolved, because a case demanding its resolution was not encountered. Compare opinions of the court and concurring opinion of Nichols, Judge, in Sanders v. United States, 594 F.2d 804 (Ct.Cl.1979). Rawlins v. United States, 646 F.2d 459 (Ct.Cl.1980) construes a discrete private law which was read as directing correction of injustice if found, as well as error.
 
 
 24
 Here we do not find the Secretary's refusal to act under Sec. 1552 to be arbitrary and capricious. He had before him, in the board record, letters from former Secretaries stating that they would have promoted the appellants on their retirement if advised it was legally possible. Such evidence is in our view hardly adequate to support a claim of error or injustice. An actual Service Secretary does not act in such matters on his own motion, when in office. He acts on the basis of advice emanating from the bureaus and offices that have cognizance of the matter at hand. He may reject that advice or, more usually, follow it.
 
 
 25
 It is not here asking the right question to ask what the Secretary would have done sua sponte. A former Secretary, asked what he would have done, makes an answer that is mere speculation if the question does not postulate what advice he would have received. None of the former Service Secretaries stated that they would have ignored or overridden vehement advice contrary to the promotion by the Bureau having cognizance. Senator, formerly Secretary, Chafee stated in 1980 that he was aware during his term of the kinds of objections the Bureau would have urged. No doubt he was, but this is not the same thing as having the objections actually placed before him.
 
 
 26
 This is the problem that actually confronted the Service Secretary who by virtue of Sec. 1552 finally had to pass on the issue. The Bureau urged that the promotion of any officer without the recommendation of a selection board would be destructive of morale and resented by officers of every rank whose promotions had to be passed on by such a board. The preservation of the merit system of promotion, which every American would wish to see preserved, was apparently at stake in the Bureau's eyes. It appears that at least one other officer has been denied a promotion on retirement for like reasons. The emphatic opposition by the Chief of Naval Personnel (an officer having obvious responsibility in the matter, as head of the Bureau having cognizance) may be criticized as being in effect opposition to the statute, Sec. 5149(b), itself. Any officer who qualified only under that statute is not in his view properly eligible for promotion. This could be taken as opposition to the statute itself. It could be argued that refusal of promotion by the Secretary, if on that ground, would nullify the statute and render its enactment a futile act, thus being arbitrary and capricious. Ordinary selection board promotions are also discretionary, yet it could hardly be urged that a refusal to promote every candidate came within the statutory discretion. In this instance, however, there is nothing to show that Congress intended to require any promotions. It may have intended to leave the Secretary free to refuse promotion for grounds applicable to all, as much as for grounds applicable to some individuals only. If it did not, it failed to say so. But we are shown nothing persuasive that a reasonable and impartial Secretary and one respectful of the appellants' legal rights, could not in good faith adopt the Bureau's position as his own. If such a Secretary could take the position urged upon him, he was not arbitrary or capricious in concluding there was no injustice to correct, and the grounds for a court's imposing a promotion upon him, narrow as they must be, necessarily do not appear.
 
 II
 
 27
 The captains argue, in the alternative, that the grade upon which their retirement pay ought to be based is the highest pay grade received while on active duty.
 
 
 28
 Captain Sharratt retired after 20 years of active service under the provisions of 10 U.S.C. Sec. 6323. Section 6323 then provided, in relevant part, that:
 
 
 29
 (c) Unless entitled to a higher grade, each officer retired under this section shall be retired--
 
 
 30
 (1) in the highest grade, permanent or temporary, in which he served satisfactorily on active duty as determined by the Secretary of the Navy; or
 
 
 31
 (2) if the Secretary determines that he did not serve satisfactorily in his highest temporary grade, in the next lower grade in which he has served, but no lower than his permanent grade.
 
 
 32
 [10 U.S.C. Sec. 6323(c) ]
 
 
 33
 Captain Selman was retired pursuant to the provisions of 10 U.S.C. Sec. 1201. Section 1201 permitted the Secretary to retire a member of the navy for physical reasons with retired pay computed by 10 U.S.C. Sec. 1401. Section 1401 directs that the retired pay be computed by taking, as a starting point, the "[m]onthly basic pay of grade to which member is entitled under [10 U.S.C. Sec. 1372] * * *." Section 1372 provides, in relevant part:
 
 
 34
 Unless entitled to a higher retired grade under some other provision of law, any member of an armed force who is retired for physical disability under section 1201 or 1204 of this title, * * *, is entitled to the grade equivalent to the highest of the following:
 
 
 35
 (1) the grade or rank in which he is serving on the date when his name is placed on the temporary disability retired list.
 
 
 36
 (2) the highest temporary grade or rank in which he served satisfactorily, as determined by the Secretary of the armed force from which he is retired. * * *.
 
 
 37
 [10 U.S.C. Sec. 1372.]
 
 
 38
 At issue, then, is the meaning of the term "grade" as used in these two statutes. The captains argue that it means "pay grade," e.g., 0-6, 0-7. The United States argues that the term means "officer grade," e.g., captain or rear admiral. The distinction is commonly of no great significance because pay grades are usually strictly correlated to officer grades. See e.g., 37 U.S.C. Sec. 201(a). This officer grade-pay grade correlation is not always precise, however. In Selman I, the Court of Claims held that AJAGs who held the officer grade of captain were entitled to the pay grade of rear admiral (lower half) while serving as AJAGs. (Rear admirals were said to constitute a single officer grade, but those in the upper half out-ranked those in the lower half. 10 U.S.C. Sec. 5501(c). Rear admirals had two pay grades, however, rear admiral (lower half) and rear admiral (upper half). 37 U.S.C. Sec. 201(a).) The captains now ask us to extend the ruling in Selman I so that they can receive retirement benefits based on the higher pay grade.
 
 
 39
 The term "grade" is extensively used in both Title 10 (Armed Forces) and Title 37 (Pay and Allowances of the Uniformed Services) of the United States Code. The two titles identically define "grade," "rank," and "pay:"
 
 
 40
 In addition to the definitions in section 1-5 of Title 1, the following definitions apply in this title:
 
 
 41
 * * *
 
 
 42
 * * *
 
 
 43
 (18) "Grade" means a step or degree, in a graduated scale of office or military rank, that is established and designated as a grade by law or regulation.
 
 
 44
 (19) "Rank" means the order of precedence among members of the armed forces.
 
 
 45
 * * *
 
 
 46
 * * *
 
 
 47
 (27) "Pay" includes basic pay, special pay, retainer pay, incentive pay, retired pay and equivalent pay but does not include allowances.
 
 
 48
 [10 U.S.C. Sec. 101(18), (19), (27). See also, 37 U.S.C. Sec. 101(15), (16), (21).]
 
 
 49
 The statute is clear: "grade," unmodified, is a step or degree in a graduated scale of office or military rank. The concept of "pay grade" is occasionally used in Title 10, but when it is, it is expressly so stated. See e.g., 10 U.S.C. Secs. 555, 815. Although we do not presume to pass conclusive judgment on the meaning of "grade" in its every use in Title 10, we have not been shown any instance of "grade," unmodified, referring to pay grade. We conclude, therefore, that "grade" as used in sections 1401, 1372 and 6323, and as applied to appellants, refers to "officer grade."
 
 
 50
 Finally, Powers v. United States, 401 F.2d 813 (Ct.Cl.1968), even though based on the same statute, cannot help the captains here. Powers had served as a Deputy and Assistant Judge Advocate General of the Navy. Serving at first in the grade of captain, in 1961 the President appointed Powers to the grade of rear admiral for the time he remained in the position of AJAG. A statutory provision existing at the time entitled deputy AJAGs to the highest rate of their rank. 37 U.S.C. Sec. 202(i)(3) (repealed 1967). Powers, therefore, skipped grade 0-7, rear admiral (lower half), altogether. The issue in the case was whether Powers, who retired in the grade of rear admiral, was entitled to retired pay based on the basic pay of rear admiral (lower half), 0-7, or rear admiral (upper half), 0-8. The Court of Claims based its decision in Powers on an analysis which interpreted "grade" in section 6323 to mean "officer grade." Although Powers has some very broad language favorable to the captains in this case (e.g. "we hold that the statutory scheme clearly bares the Congress' intention that plaintiff's retired pay be based upon the highest rate of pay he received while on active duty," 401 F.2d at 614), the holding is truly a narrow one applicable only to the facts of that case. The court explicitly pointed out that the claim involved in Powers was novel since it specifically concerned the two pay grades of the officer grade of rear admiral. Powers is applicable, therefore, solely to that situation where there are two pay grades associated with a retired officer's "officer grade."
 
 III
 Conclusion
 
 51
 Accordingly, the judgment of the United States Claims Court is affirmed.
 
 
 52
 AFFIRMED.
 
 
 
 *
 Judge Nichols assumed senior status effective October 1, 1983
 
 
 [1]
 Some of the Code provisions at issue in this case have been amended in ways not applicable to the captains' claims. See e.g., Defense Officer Personnel Management Act of 1980, Pub.L. No. 96-513, 94 Stat. 2904. For ease of reference, all citations are to the United States Code provisions in force at the time of the captains' retirements