Sidney H. CANTWELL, Jr., Plaintiff–Appellee,

v.

COUNTY OF SAN MATEO, a political subdivision of the State of California, and the Retirement Board of San Mateo County, Defendants–Appellants.

Sidney H. CANTWELL, Jr., Plaintiff–Appellant,

v.

COUNTY OF SAN MATEO, a political subdivision of the State of California and the Retirement Board of San Mateo County, Defendants–Appellees.

Nos. 78–1765, 78–1820.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1980.

Decided Oct. 31, 1980.

632

Keith C. Sorenson, Dist. Atty., Redwood City, Cal., on brief; Thomas Daniel Daly, Deputy Dist. Atty., Redwood City, Cal., for San Mateo, etc.

Howard M. Daschbach, Law Offices of Howard, Daschbach, Menlo Park, Cal., for Cantwell.

Before HUG and ALARCON, Circuit Judges, and BLUMENFELD *, District Judge.

HUG, Circuit Judge:

The principal issue in this appeal involves the resolution of an apparent conflict between federal statutes granting retirement pay to military reserve personnel and California statutes establishing retirement plans for county employees. The appellants, the County of San Mateo ("County") and the Retirement Board of San Mateo County ("Board"), challenge the district court's decision determining that the federal statutes were controlling. The County also contends that the district court erred in determining the date as of which the appellee, Sidney H. Cantwell, Jr., was entitled to have deductions from his salary to the retirement fund discontinued. Cantwell appeals the denial of his request for an award of attorney's fees.

I

Cantwell has been continuously employed by the County as an engineer since April, 1948. He has been a member of the San Mateo County Employees Retirement Association ("Association") since 1948. The benefits Cantwell will receive and the requirements he must fulfill as a member of the Association are set forth in the County Employees Retirement Law of 1937, Cal. Gov't Code §§ 31450–31898.

Prior to his employment by the County Cantwell had served on active duty in the United States Navy from January 6, 1943 to October 3, 1946, a total of 3 years, 8 months and 27 days. After leaving active Navy service, Cantwell served in the United States Naval Reserve until October, 1968, the last 20 years and 6 months of which was concurrent with his County employment.

Cantwell brought this action claiming that the County had denied him credit for his prior active Navy service to which he claims he was entitled under Cal. Gov't Code §§ 31641.1 and 31641.2.[1] These sec-

---

* The Honorable M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. Cal. Gov't Code § 31641.1 provides:
   A member who was in public service before becoming a member may elect by written notice filed with the board to make contributions pursuant to Section 31641.2 and to receive credit in the retirement system for all allowed public service time. Credit for part-time service shall be calculated as provided in Section 31641.5.
   Cal. Gov't Code § 31641.2 provides:
   Any member of the retirement system who elects pursuant to Section 31641.1 to make contributions and receive credit as service for time for which he claims credit because of public service shall contribute to the retire-

ment fund, prior to the effective date of his retirement, by lump sum payment or by installment payments over a period not to exceed five years, an amount equal to the sum of:
   (a) Twice the contributions he would have made to the retirement fund if he had been a member during the same length of time as that for which he has elected to receive credit as service, computed by applying the rate of contribution first applicable to him upon commencement of his membership in this system to the monthly compensation first earnable by him at the time as provided in Section 31641.3, multiplied by the number of months for which he has elected to receive credit for county service, including time, if any, prior to the establishment of the system,

tions allow members of county retirement systems to receive credit for prior public service. The County refused to allow Cantwell to receive such credit based on Cal. Gov't Code § 31641.4,[2] which provides that credit for prior public service is to be allowed only if the employee is not entitled to receive a pension from the public agency for which the employee previously worked. Cantwell asserted that 10 U.S.C. § 1336[3] prevents the County from denying him credit for his active Navy service, despite Cal. Gov't Code § 31641.4.

## II

The district court found a conflict between the federal and the state statute, in that 10 U.S.C. § 1336 authorizes credit in both pension plans for the active service, while Cal. Gov't Code § 31641.4 denies such double credit. The court held that under the supremacy clause of the United States Constitution, art. VI, cl. 2, the federal statute must prevail; otherwise, the congressional policy of encouraging and rewarding military reserve service would be frustrated.

On appeal, the County presents three arguments opposing the district court's decision that section 1336 of the federal statute must prevail. The first contention is that the language in section 1336, which requires that the service be "otherwise properly credited," shows on its face that section 1336 does not apply to Cantwell's active

service because it is not "properly credited" under Cal. Gov't Code § 31641.4.

■ In the context of interpreting statutory language, this court has recently stated:

> While there may be instances where the language of a statute is so lucid on a particular issue that resorting to legislative history would be inappropriate . . ., such a rule is not normally applicable where . . . the court must construe the meaning of an undefined term in a statute when the term used does not consist of words of art.

*Church of Scientology v. United States Department of Justice*, 612 F.2d 417, 421 (9th Cir. 1979). If the plain meaning of statutory language leads to a result contrary to or at variance with the statutory purpose, this court will look to legislative history or other extrinsic aids so that the legislative purpose may be fulfilled. *Id.* at 420–422.

At first glance the County's reliance on the phrase "if otherwise properly credited" appears to have merit. Such an interpretation would have the effect of rendering section 1336 meaningless, however, because it would allow any state to circumvent section 1336 merely by passing a law denying membership in a retirement system to anyone eligible to receive a reserve pension. This would frustrate the congressional purpose underlying the reserve pension system and section 1336.

---

and which will constitute current service under this system.

. . . . .

**2.** Cal. Gov't Code § 31641.4 provides:

A member shall receive credit for employment in public service only for such service as he is not entitled to receive a pension or retirement allowance from such public agency. The service for which he elects to contribute and the fact that no pension or retirement allowance will accrue to such member by virtue of his employment in such public agency must be certified to by an officer of the public agency where he rendered such public service or must be established to the satisfaction of the board.

. . . . .

**3.** The statutes governing retired pay for non-regular (reserve) military service are contained

in Chapter 67 of Title 10 of the United States Code. 10 U.S.C. § 1336, which is a part of this chapter provides:

No period of service included wholly or partly in determining a person's right to, or the amount of, retired pay under this chapter may be excluded in determining his eligibility for any annuity, pension, or old–age benefit, under any other law, on account of civilian employment by the United States or otherwise, or in determining the amount payable under that law, if that service is otherwise properly credited under it.

Pursuant to 10 U.S.C. § 1332, Cantwell's period of active service will be included in computing his pension for his reserve service.

■ We have searched in vain for pertinent legislative history of section 1336 or for any cases directly interpreting it. The purpose in enacting the overall retirement pay program for reserve personnel is clearly, however, "to provide an inducement to qualified personnel to remain active in the Reserves in order to maintain a cadre of trained soldiers for use in active duty if the need should arise." *Alexander v. Fioto*, 430 U.S. 634, 639, 97 S.Ct. 1345, 1348, 51 L.Ed.2d 694 (1977) (footnote omitted). "One of the specific inducements to these part–time servicemen (many of whom worked for the Federal Government) was to allow them to count concurrent periods of federal civilian service and of military duty for both civilian and military retirement." *Merrill v. United States*, 338 F.2d 372, 375 (Ct.Cl. 1964).

■ Adopting the County's interpretation of the language of section 1336 would undermine the purpose of the retirement pay program for reserve personnel. Congress intended that periods of service used in computing retirement pay under Chapter 67 could not be excluded from retirement programs established by other laws solely because the reservist would also receive a Chapter 67 pension.[4] Such an intent is consistent with the language "if otherwise properly credited."[5] We conclude that "otherwise" refers to any criteria the other pension plan may impose except for the fact that a person is receiving a pension under Chapter 67.[6] Therefore, 10 U.S.C. § 1336 does conflict with Cal. Gov't Code § 31641.4, because section 1336 requires that double credit for Cantwell's active service be given him in both his retirement plans and section 31641.4 denies it. Having reached this conclusion, we must determine whether section 1336 prevails over the California statutes.

When federal legislation conflicts with state legislation this court has stated:

State legislation must yield under the supremacy clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs.

*Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979). *See also Jones v. Rath Packing Co.*, 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977); *United States v. Brown*, 552 F.2d 817, 821 (8th Cir.), *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977). The military

4. The only reason the County gave for refusing to credit Cantwell for his active service is because he will receive a pension for it. That is the same position taken by the California Attorney General in similar cases. *See* 30 Op. Atty.Gen. Cal. 49 (1957).

5. When originally enacted in 1948, section 1336 read:

No period of service otherwise creditable in determining the eligibility of any person to receive, or the amount of, any annuity, pension, or old-age benefit payable under any provision of law on account of civilian employment, in the Federal Government or otherwise, shall be excluded in such determination because such period of service may be included, in whole or in part, in determining the eligibility of such person to receive, or the amount of, any retired pay payable under this title.

62 Stat. 1089 (1948). In 1956 the words "otherwise creditable" were changed to the present language. 70A Stat. 104.

6. We find support for this conclusion in analogous statutes governing the federal employee retirement system. Prior military service is creditable in the federal system, in a manner similar to the California county system. The statute also provides that the military service may not be credited if the employee is awarded retired pay on account of the military service. However, the statute specifically permits inclusion of the military service, even though the person will receive a pension under Chapter 67 of Title 10. *See* 5 U.S.C. § 8332(c)(2). This is persuasive evidence of congressional intent that the service for which a person receives a pension under Chapter 67 may not be excluded on that basis alone from credit in another retirement system.

Any other construction of section 1336 might actually discourage membership in the reserves. Someone who has served on active duty but will not receive a pension for that service could receive credit under Cal. Gov't Code § 31641.4. The employee might choose not to join the reserves so that he could obtain credit in the California county pension system for the prior active service.

reserve retirement pay program was enacted pursuant to Congress's power to raise and maintain armies and a navy. U.S. Const. art. 1, § 8, cls. 12 and 13. Because the state statute is in conflict with the federal statute implementing that purpose, we agree with the district court that the federal legislation must prevail.

The County's second argument, which relies on *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), is that even if section 1336 is interpreted as conflicting with the California statutes, it is invalid as an infringement of the state's rights under the tenth amendment to the United States Constitution. In *Usery* the Court considered the 1974 amendments to the Fair Labor Standards Act, which extended the Act's minimum wage and maximum hour provisions to almost all employees of states and their political subdivisions. The Court held that the amendments directly displaced "the States' freedom to structure integral operations in areas of traditional governmental functions," (i. e., the State's power to determine the wages it will pay to its employees, what hours the employees will work and how they will be compensated for overtime) and were, therefore, "not within the authority granted Congress by Art. I, § 8, cl. 3 [the Commerce Clause]." *Id.* at 852, 96 S.Ct. at 2474 (footnote omitted). The Court specifically limited its holding to the power of Congress under the Commerce Clause by stating:

> We express no view as to whether different results might obtain if Congress seeks to affect integral operations of state governments by exercising authority granted it under other sections of the Constitution such as the spending power, Art. I, § 8, cl. 1, or § 5 of the Fourteenth Amendment.

*Id.* at 852 n. 17, 96 S.Ct. at 2474 n.17.

In the present case section 1336 affects the same state interest as in *Usery, i. e.,* the amount of compensation county employees receive (in this instance, in the form of pension benefits). As noted above, however, the authority under which Congress enacted section 1336 is not art. I, § 8, cl. 1, it is art. I, § 8, cls. 12 and 13. This is the key distinction between this case and *Usery.* The Court in *Usery* noted that it was not overruling *Case v. Bowles*, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552 (1946), in which the Court held that Congress could set maximum prices in order to carry on war even if this affected a state's sale of goods. *Usery,* 426 U.S. at 854–55 n.18, 96 S.Ct. at 2475 n.18, 49 L.Ed.2d 245. The Court specifically stated, "Nothing we say in this opinion addresses the scope of Congress's authority under its war power." *Id.*

In *Jennings v. Illinois Office of Education*, 589 F.2d 935 (7th Cir.), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979), the Seventh Circuit considered the tenth amendment objections of the State of Illinois to the provisions of the Veterans' Reemployment Rights Act, which requires states to restore employees inducted into the United States Armed Forces pursuant to the Selective Service Act to their former positions following the person's discharge. Illinois had declined to restore Jennings to his former position following his discharge on the ground that no position was open at the time. The Court found authority for the Act under the war powers contained in art. I, § 8, cls. 11–13. *Id.* at 937. Relying on *Case v. Bowles*, which the court noted had explicitly not been overruled by *Usery*, the Court found the grant of war powers to be sufficient to sustain a statute that might otherwise violate the tenth amendment.

■ We adopt the reasoning of the Seventh Circuit in *Jennings* and of the Supreme Court in *Case v. Bowles*, and conclude that *Usery* is inapposite to the present case. Although the congressional power to declare war, art. I, § 8, cl. 11 is not directly involved in the present case, the power to raise and maintain armies and a navy, art. I, § 8, cls. 12 & 13, is so closely intertwined with that power that the rationale of *Case v. Bowles* and *Jennings* applies. We find that congressional power to pass section 1336 exists under art. I, § 8, cls. 11, 12, & 13, and conclude that the constitutional grant of these powers is sufficient to sus-

tain section 1336 against a tenth amendment challenge. We note parenthetically that California could have chosen not to afford credit for any prior public service. Having chosen to do so, however, it cannot do so in a manner which conflicts with section 1336.

The County's final argument against applicability of section 1336 is that it applies only when the reservist is employed by the Federal Government, and not when the person is employed by a state government. The County relies upon the above-quoted language of *Merrill v. United States*, 338 F.2d at 375 that one of the purposes of Chapter 67 was to allow employees "to count concurrent periods of federal civilian service and of military duty...."

This argument is without merit for several reasons. The *Merrill* court did not indicate in any way that Chapter 67 applied only to federal civilian employment. As the district court pointed out, adopting the County's argument would be ignoring the words "civilian employment by the United States or otherwise" in section 1336. Such a construction would also ignore the words "under any other law."

■ For all the above reasons we agree with the district court that Cantwell is entitled to receive credit in the County retirement system for his 3 years, 8 months and 27 days of active Navy service.

### III

When the period of Cantwell's prior Navy service is added to his employment period with the County, he has a total of 30 years' service as a member of the retirement system as of August 17, 1974. Because Cal. Gov't Code § 31625.2 [7] states that no contributions shall be deducted from the salary of an employee having credit for 30 years' service, the district court ordered the County to refund to Cantwell the deductions which had been made from his salary since that date, provided that Cantwell made the appropriate contribution pursuant to Cal. Gov't Code § 31641.2 to receive credit for his Navy service.[8] Cantwell did not notify the County in writing that he desired to contribute and to receive credit for his active military service until November 17, 1975. The County contends that this was the first time Cantwell submitted the appropriate notice required by Cal. Gov't Code § 31641.1 to receive credit for prior service. The earliest the County could have approved the request would have been December 11, 1975, when the Board met, and thus, the County contends that if Cantwell is entitled to reimbursement, it is as of December 11, 1975. The County argues that only after Cantwell gave the written notice and made the appropriate contribution would he have had credit for the required 30 years of service under Cal. Gov't Code § 31641, which defines "service." [9]

7. Cal. Gov't Code § 31625.2 provides:
   Notwithstanding any other provisions of this chapter, contributions shall not be deducted from the salary of any member having credit for 30 years' service providing such member was a member on the effective date of this section and remained in membership continuously until credited with 30 years' service.

8. The court found, and the parties agree, that the amount Cantwell would have to contribute would be $3,065.04. The amount which had been deducted that was to be reimbursed to Cantwell was $4,820.65. The court subsequently vacated for further consideration the portion of the order requiring reimbursement. After holding a further hearing, the court again determined that Cantwell was entitled to discontinuance of the contribution as of August 17, 1974. By the time of this supplemental decision, the amount deducted from Cantwell's

salary had risen to $7,094.73, which the court again ordered the County to refund to Cantwell.

9. Cal. Gov't Code § 31641 provides:
   "Service" means uninterrupted employment of any person appointed or elected for that period of time:
   (a) For which deductions are made from his earnable compensation from the county or district for such service while he is a member of the retirement association.
   (b) In military service for which the county or district or member is authorized by other provisions of this chapter to make, and does make, contributions.
   (c) For which he receives credit for county service or for public service or for both pursuant to the provisions of this article.
   (d) Allowed for prior service.

The district court found that the August 17, 1974 date was proper because, although the elements of estoppel were not present, Cantwell's filing of a written notice would have been a futile act. The County does not dispute that it would have denied any such request. Cantwell expressed his belief orally on three separate occasions between April of 1967 and July of 1973 to the administrator of the County retirement system that he should be given credit for his prior Navy service. Each time Cantwell was told he was ineligible. Only later did Cantwell discover, and write the letter concerning, section 1336.

We agree with the County's argument on this point. Cal. Gov't Code § 31641.1 clearly requires an employee to file written notice of an election to make the contributions for prior credit. Section 31625.2 requires discontinuance of contributions to the retirement system from an employee "having credit" for 30 years' service. An employee relying on prior service toward his 30 years' service cannot "have credit" until he has filed the required written notice.

■ We do not agree with the district court that the filing of such a notice would have been a "futile" act.[10] Filing such a notice serves two purposes. First, the employee gives official notice that he has some prior public service and that he desires to make appropriate contributions to receive credit for it in the County system. Second, the entire Board is put on official notice of the employee's intentions so that it may make a thorough investigation of the prior service and so that the amount of the contribution may be computed. Cantwell's oral communications with the administrator

of the County system simply do not satisfy the statutory mandate that "a county employee must affirmatively elect to apply for and receive credit for prior public service." *Los Angeles County Firefighters, Local 1014 v. Board of Retirement*, 46 Cal.App.3d 762, 768, 120 Cal.Rptr. 478 (1975).

It is true that the Board would have denied, and subsequently did deny, Cantwell's request. The purposes behind the statutory requirements are satisfied, however, only by compliance therewith.

■ We agree that the earliest possible date at which the County could have approved Cantwell's written request is the correct date for discontinuing Cantwell's contributions. That is the date on which Cantwell could have actually made the appropriate contributions, and thus would "have [the] credit" necessary for discontinuance of deductions under Cal. Gov't Code § 31625.2.[11]

Between August 17, 1974, the date as of which the district court ordered a refund of Cantwell's contributions, and December 11, 1975, the date we have determined is the appropriate date from which the refund should be given, deductions from Cantwell's salary totalled $2,596.35. The district court ordered the County to refund $7,094.73, plus interest, to Cantwell. Subtracting $2,596.35 from that amount leaves a refund due of $4,498.38, plus interest.

## IV

■ Cantwell requested that the district court award him $4,000 in attorney's fees. The court denied the request for several reasons, none of which Cantwell challenges on appeal. Instead, Cantwell proposes for

10. We agree with the district judge that under the facts of this case, Cantwell could not assert estoppel against the County. This is true whether we apply California law, as the district court did, see *Strong v. County of Santa Cruz*, 543 P.2d 264, 266 (Cal.1975); *City of Long Beach v. Mansell*, 476 P.2d 423, 442 (Cal.1970), or federal law, see *Oki v. I. & N. S.*, 598 F.2d 1160, 1162 (9th Cir. 1979); *United States v. Ruby Co.*, 588 F.2d 697, 703–04 (9th Cir. 1978), cert. denied, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *Santiago v. I. & N. S.*, 526 F.2d 488, 491 (9th Cir. 1975) (en banc), cert.

denied, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976).

11. In using the earliest possible date at which the Board could approve an employee's request, the Board is prevented from unreasonably delaying in taking action upon a request. Of course, in the majority of cases, request for credit for prior service is made before the 30 years' service, including the prior service, has expired, and thus there will be no such problem.

the first time on appeal a system for apportioning the fees. His suggestion is that as the first nineteen members of the County retirement system who have backgrounds similar to Cantwell's elect to receive credit for their service, they also be required to contribute one–twentieth of Cantwell's fees, to be remitted to Cantwell.[12] Aside from the fact that this suggestion was neither presented to nor considered by the district court, it has serious flaws.

The only tenable theory upon which such a fee award could be made would be the common benefit exception to the general rule against allowance by the federal courts of attorney's fees. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 264–65 n.39, 95 S.Ct. 1612, 1625 n.39, 44 L.Ed.2d 141 (1975). This court has set forth criteria for an award of fees under such a theory:

> The common benefit exception . . . applies where a litigant confers a substantial benefit on an easily identifiable class of persons, where the benefits can be traced with reasonable accuracy, and the costs of litigation can be shifted with some exactitude, to those benefiting.

*Stevens v. Municipal Court,* 603 F.2d 111, 112 (9th Cir. 1979).

At least two of the above factors are absent in the present case. The class of persons benefited is not easily ascertainable. The decision in this case will affect all county employees in the entire state of California, a fact which Cantwell apparently overlooks. There is no ready way to identify all the employees who might be able to avail themselves of section 1336. More importantly, for the same reason, there is no method of shifting the costs with some exactitude. Requiring only the first nineteen county employees who elect to receive credit to contribute toward the fees will result in their paying a far higher amount than their proportionate share. That alone would be enough to deny Cantwell's request.

In addition, Cantwell's proposal raises serious jurisdictional questions because none of the other affected employees are parties to this case or have filed similar cases in federal court. *See Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 765–66, 771–72 (9th Cir. 1977). There would also be problems with the fact that the other employees would be personally contributing to Cantwell's fees, rather than having the award come from an easily identifiable fund. *See id.* at 770. *See also National Association for Mental Health, Inc. v. Weinberger,* 68 F.R.D. 387, 392 (D.D.C.1975).

For all the above reasons, we affirm the district court's denial of Cantwell's original motion for allowance of attorney's fees, and we reject Cantwell's new proposal.

## V

We conclude that the district court was correct in determining that 10 U.S.C. § 1336 prevails over sections of the California Government Code governing county retirement systems. We modify the district court's order requiring the County to refund $7,094.73, plus interest, to Cantwell, upon his making the appropriate contribution for prior service. The County is required to grant Cantwell credit for his prior service upon Cantwell's contribution of $3,065.04, and to refund to Cantwell $4,498.38, plus interest. Of course, the amounts may be offset upon Cantwell's being granted the credit. We affirm the district court's denial of attorney's fees.

As modified, the judgment is affirmed and remanded to the district court for computation of interest.

---

**12.** Cantwell estimates there are approximately twenty county employees similarly situated, thus the one–twentieth figure. No basis in fact is given for this estimate.