John P.MORRIS, Plaintiff-Appellant,

v.

EMPLOYE TRUST FUNDS BOARD of the State OF WISCON-SIN, Defendant-Respondent.

Court of Appeals

*No. 94–0857. Submitted on briefs January 13, 1995.—Decided June 27, 1996.*

(Also reported in 554 N.W.2d 205.)

175

For the plaintiff-appellant the cause was submitted on the brief of *Bruce K. Kaufmann* of *Jenswold, Studt, Hanson & Gennrich* of Madison.

For the defendant-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Warren M. Schmidt*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

GARTZKE, P.J. John Morris appeals from a circuit court order affirming a decision of the Employe Trust Funds Board of the State of Wisconsin, which in turn adopted an administrative decision by a hearing examiner. Morris contends that the Board erred in determining when he "began service" under § 20.926, STATS., 1973, and in determining his "active military service" for which he should be credited in figuring his state retirement benefits. We reject his argument concerning when he "began service," and we conclude that he is ineligible for more credits for "active military service." We, therefore, affirm.

## 1. BACKGROUND

In 1971, Morris was appointed to the Wisconsin Tax Appeals Commission. He continued in his position as commissioner until he retired in 1991. During his tenure, he was reappointed several times, went from part-time to full-time, and twice served as chairman. One of his reappointments occurred in 1985, after the legislature set a special one-time date for all commissioners' terms to expire simultaneously.

In 1973, the legislature enacted ch. 51, STATS., Laws of 1973, creating § 20.926, STATS. The new law established a category of employees called "career executives" who were eligible for higher retirement benefits

in exchange for higher mandatory retirement contributions and a mandatory retirement age. The law required qualifying employees to elect by December 31, 1973, if they wished to come under the new category. The new law provided that any person who "begins service" in a career executive position after July 1, 1973, would be a "career executive" without right of election.

Although Morris elected in 1973 not to come under the § 20.926, STATS., program, he claimed career executive retirement benefits when he retired in 1991. He contended that because his post-1973 reappointments to the tax appeals commission meant he "began service" anew several times after his election not to participate, he automatically became a "career executive" without right of election. The board rejected his contention.

Upon retirement, Morris submitted an affidavit to the board purporting to show that he qualified for an additional 1.5 years of creditable state service because he had spent a qualifying amount of time on "active" military duty in the Air Force Reserves. Morris served in the Air Force Reserves from May 31, 1955, to August 29, 1955, and from March 1, 1958, to February 10, 1978, and in the Air Force from August 30, 1955 through February 28, 1958. Morris had been granted two-and-one-half years of creditable military service for his service in the Air Force.

At a hearing before a hearing examiner, Morris furnished documents[1] showing "active duty points" he had accumulated in the Air Force Reserves since 1955,

---

[1] The documents are Morris' Report of Separation and Record of Service, travel vouchers indicating his destinations while serving on active duty, Request and Authorization for Active Duty Training/Active Duty Tour, Request and Authori-

for the purposes of a military pension. He testified that each point represented one full day of active duty time. While in the Air Force Reserves, he also accumulated inactive duty points. He testified that inactive duty points are earned when "you are put on a reserve status with your individual reserve unit and you are on a schedule of weekends," and that his active duty points earned in the Reserves were not for training.

> [O]n active duty orders for the United States Air Force, I was either by direction of the president of the United States or by the order of the secretary of Air Force, ordered to active duty for a specific period of time.

While ordered to active duty, he was assigned from his reserve unit to regular air force units. He testified as follows as to a 1977 active duty mission:

> From Ramstein Air Base, Germany, I flew cargo within the system of the air — Military Airlift Command as a navigator to Dhahran, Saudi Arabia. Back from Dhahran, Saudi Arabia to Ramstein, Germany. And then from Ramstein, Germany, back to Dhahran, Saudi Arabia, back to Ramstein Air Base, Germany. From Ramstein Air Base, Germany, back to Dover Air Force Base, at which time I went back off of active duty, returned back to my home and that is just one of the hundreds of orders that I've received sending me to different places all over the world, flying in the active duty status and flying around the world.

He testified that other missions were similar to the 1977 mission.

---

zation for change of Administrative Order, flight authorization and ANG/USAFR Point Credit Summary.

178

I flew out of bases out of Kansas City, Missouri. I went to Japan flying with the Military Airlift Command out of our own aircraft, which is a C-124 Globemaster. We would go and fly and pick up cargo in California. We would fly it to Japan. We would fly it into Korea. We would fly cargo into Vietnam, to the Philippines, to Germany, to — to Saudi Arabia. We were worldwide. We were in the Military Airlift Command system . . . .

In his proposed decision, the hearing examiner concluded "the greater weight of the credible evidence does not indicate that the Appellant's reserve unit was called into 'active duty' at any time from 1958 to 1971 or was functionally under the control of the regular armed forces during that period . . . ." The hearing examiner concluded that Morris was not entitled to any additional creditable service for his service in the Air Force Reserves. The Board adopted the decision. Morris then brought a certiorari action in the circuit court for Dane County for review of the Board's decision.[2] The court affirmed the Board, and he appeals.

## 2. BEGINNING SERVICE

Morris argues that because the date he "began service" under § 20.926, STATS., 1973, is a matter of first

---

[2] Section 40.08(12), STATS., provides:

Notwithstanding s. 227.52, any action, decision or determination of the board, the Wisconsin retirement board, the teachers retirement board, the group insurance board or the deferred compensation board in an administrative proceeding shall be reviewable only by an action for certiorari in the circuit court for Dane County that is commenced by any party to the administrative proceeding, including the department, within 30 days after the date on which notice of the action, decision or determination is mailed to that party, and any party to the certiorari proceedings may appeal the decision of that court.

impression, we should give no weight to the Board's determination. The Board argues that we should defer to its determination. We need not resolve the dispute. Even giving the Board's determination no weight, we conclude that Morris did not "begin service" anew with every appointment.

Morris argues that an appointed state official who holds over without being legislatively confirmed is and remains a de facto official until confirmation. Because his service on the tax appeals commission was punctuated with several periods of delay while he waited for either reappointment or confirmation, he concludes that his appointments began new terms of service. That is not the law.

Over thirty years ago, the supreme court held that when "an incumbent holds over after the expiration of the term for which he was originally appointed," then "it cannot be said that the (appointive) office is vacant . . . ." Specifically, an officer required to be confirmed by the legislature has the right to continue in office after the expiration of his or her term and is an officer de jure until the legislature again considers confirmation.[3] *State ex rel. Thompson v. Gibson*, 22 Wis. 2d 275, 294, 125 N.W.2d 636, 645 (1964).

One who serves in the same capacity for twenty years does not "begin service" more than once.[4] Reap-

---

[3] Morris agrees that he falls into this category. In his brief he states that his appointment was not effective "until Senate confirmation took place." Appointees requiring Senate confirmation are those which the *Thompson* court held are "de jure" officials with a legal right to hold over. *Id.*, 22 Wis. 2d at 293-94, 125 N.W.2d at 645.

[4] Morris argues that when he went from a part-time commissioner to a full-time chairperson, his position necessarily

pointments and reconfirmations sustained Morris' service, but his service never lapsed. The practical details of his career confirm that proposition. During his entire twenty years, his sick leave and vacation pay accrued, and he served without interruption of his salary.

We reject Morris's argument that because Wis. Const. art. IV, § 26, precluded him from electing to come under the career executive program in 1973, he is entitled to receive career executive program retirement benefits after his first term of office expired.

In 1973, Article IV, § 26 provided in relevant part:

> The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office.

Morris contends this provision prohibited him from receiving increased compensation, "enhanced pension program benefits," until after his term of office had expired in 1977. Since § 20.926, STATS., provides that persons who begin service after July 1, 1973, are "subject to this section without right of election," Morris contends he should receive the additional retirement benefit.

---

changed. We disagree. Section 15.06(2), STATS., provides that the governor shall "designate" a chairperson from among the members "to serve as chairperson" for a two-year term. A member designated as chairperson for a portion of his or her appointed term remains a member, and his other position as a member is not changed by becoming chairperson.

We need not decide if the constitution prohibited Morris from making the § 20.926, STATS., election in 1973. Even if with his reappointment in 1977 the state constitution no longer prohibited him from obtaining § 20.926 benefits, that does not automatically entitle him to those benefits. He must be eligible under the statute, and to be eligible he had to begin service in a career executive position after July 1, 1973. Although his first term of office expired in 1977, Morris did not "begin service *after* July 1, 1973." His service began well before that date in 1971 and did not begin anew with each appointment. Morris is not eligible under § 20.926 for the career executive program. His constitutional argument has no merit.

### 3. MILITARY SERVICE CREDIT

The Board denied Morris's claim for four years of creditable military service, granting him instead two and one-half years. Four years is the maximum creditable service Morris could receive. Section 40.02(15)(c), STATS.

■

The statute providing for certiorari review of the Board's decision, § 40.08(12), STATS., does not allow the certiorari court to take evidence. We therefore apply traditional common law certiorari standards to review the Board's decision. *State ex rel. Brookside v. Jefferson Bd.*, 131 Wis. 2d 101, 119-20, 122, 388 N.W.2d 593, 600-01 (1986). Common law certiorari review is limited to whether (1) the Board kept within its jurisdiction, (2) it proceeded on a correct theory of law, (3) its action was arbitrary, oppressive or unreasonable representing its will and not its judgment, and (4) the Board could rea-

sonably make its order or determination based on the evidence before it. *Id.* at 119-20, 388 N.W.2d at 600.

■■■

Statutory interpretation is a question of law, and we defer in varying degrees to an agency's interpretation of an ambiguous statute. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659-60, 539 N.W.2d 98, 102 (1995). In a de novo review, we accord the agency's interpretation no weight. *Id.* at 660 n.4, 539 N.W.2d at 102. If an agency's interpretation is accorded deference under the due weight standard, we need not defer to an interpretation which, while reasonable, is not the interpretation which we consider best and most reasonable. *Id.* When we grant an agency's interpretation great weight, we will sustain if it is reasonable. *Id.* at 661, 539 N.W.2d at 102. We grant great weight deference only when we conclude that all of the following requirements have been met:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute.

*UFE Incorporated v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996).

a. Statutes

Section 40.02(15), STATS., provides in pertinent part:

(a) "Creditable military service" means active service in the U.S. armed forces, based on the total period of service in the U.S. armed forces, provided:

1. The participant enlisted or was ordered or inducted into active service in the U.S. armed forces:

2. The participant left the employment of a participating employer to enter the U.S. armed forces;

3. The participant returns to the employment of the employer whose employment the participant left to enter the U.S. armed forces within 180 days of release or discharge from the armed forces, or within 180 days of release from hospitalization because of injury or sickness resulting from service in the armed forces;

4. The period of service in the U.S. armed forces is not more than 4 years, unless involuntarily extended for a longer period;

5. The participant was discharged from the U.S. armed forces under conditions other than dishonorable;

6. The participant upon return from service in the U.S. armed forces furnishes evidence required to establish the participant's rights under this chapter . . . .

(c) Notwithstanding sub. (17) (intro.) and any other law, any person who is credited with 5, 10, 15 or 20 or more years of creditable service, not counting any previously granted creditable military service, may receive creditable military service at the time of retirement for not more than 1, 2, 3 or 4 years, respectively, of active service which meets the standards under par. (a)5., provided:

1. This paragraph applies only to active military service served prior to January 1, 1974.

2. Any creditable military service otherwise granted shall be included in determining the maximum years to be granted under this paragraph.

3. Creditable military service under this paragraph shall be allocated at the time of retirement in proportion to the amount of the participant's creditable service for each of the types of creditable service set forth in s. 40.23(2m)(e) on the date the participant attains 5, 10, 15 or 20 years of creditable service.

4. This paragraph does not apply to any active service used for the purpose of establishing entitlement to, or the amount of, any benefit, other than a disability benefit, to be paid by any federal retirement program except OASDHI and the retired pay for nonregular military service program under 10 USC 1331 to 1337 or, if the participant makes an election under s. 40.30(2), by any retirement system specified in s. 40.30(2)n other than the Wisconsin retirement system.

5. The participant's creditable service terminates on or after January 1, 1982.

Section 40.02(17), STATS., provides in pertinent part:

"Creditable service" means the creditable current and prior service, expressed in years and fractions of a year . . . and creditable military service. . . . How much service in any annual earnings period is the full-time equivalent of one year of creditable service shall be determined by rule by the department and the rules may provide for differing equivalents for different types of employment. . . . No more than one year of creditable service shall be granted for any annual earnings period . . . .

### b. Creditable Military Service During Public Employment

The Board concluded that Morris could not receive military service credits for his active service, if any, while he served as a commissioner. The Board noted that state employees on reserve training, even if absent for several weeks, take "military leave" and receive "creditable service" for the entire year of state service. Section 40.02(17), STATS., bars participants in the state retirement program from receiving more than one year of creditable service for each calendar year.

The Board said Morris sought creditable military service under § 40.02(15), STATS., without distinguishing between § 40.02(15)(a) and (c). Reasonably well-informed persons could differ on the relationship of § 40.02(15)(a) to (c). These provisions are therefore ambiguous. *See State v. Sutton*, 177 Wis. 2d 709, 716, 503 N.W.2d 326, 329 (Ct. App. 1993) (interaction of two subsections can create ambiguity).

When construing an ambiguous statute, we examine its history, context, subject matter, scope and purpose. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 202, 496 N.W.2d 57, 61 (1993). We also consider the agency's interpretation of the statute. *UFE Incorporated*, 201 Wis. 2d at 282, 548 N.W.2d at 60.

We need not decide what level of deference we should grant the Board's interpretation of § 40.02(15), STATS., with respect to when public employees can obtain creditable military service for their active military service during their public employment. Even under the great weight standard, we would determine

that the Board's interpretation is unreasonable because it is clearly contrary to legislative intent. *Harnischfeger*, 196 Wis. 2d at 662, 539 N.W.2d at 103.

Section 40.02(15), STATS., was enacted in 1981. Laws of 1981, ch. 96. During the debate on the measure, the Joint Survey Committee on Retirement Systems twice explained that § 40.02(15)(c) provided creditable military service for military service "which is not a break in public employment." Fiscal Estimate, 1981 AB 272; Report on AB 272 and Assembly Substitute Amendment #1, at 4. "Not a break in public employment" can mean military service *prior to* or *during* public employment. The parties agree that § 40.02(15)(c) allows creditable military service for military service prior to public employment. But because creditable military service earned under sub. (15)(c) is not subject to the sub. (17) limitation that no more than one year of creditable service be granted for any annual earnings period, the legislature must have intended that creditable military service also means service during public employment. *See* Joint Survey Committee Report on Assembly Bill 272 and Assembly Substitute Amendment #1, at 4, ("Changes the crediting of military service which is not a break in public employment . . . and deletes any restriction on 'double crediting' of such military service.").

Thus § 40.02(15), STATS., establishes two ways to obtain "creditable military service." Under the first, an employee who leaves employment of a "participating employer" to serve in the armed forces and then returns to his employment after a discharge under conditions other than dishonorable receives credit for that service in the armed forces. Section 40.02(15)(a)1 through 7. Under the second, an employee earns creditable military service for active service in the armed

forces prior to or during his employment with a participating employer.

We conclude that if Morris is otherwise qualified, he may receive creditable military service under § 40.02(15)(c), STATS., for his active military service while he was on the tax appeals commission prior to January 1, 1974.[5]

c. "Active Service"

The Board ruled that because he had not shown that his reserve unit was called into active duty or was functionally under control of the regular armed forces, "as would be required," the Board said under § 40.02(15), STATS., and WIS. ADM. CODE § ETF 10.01(1g), Morris did not establish that his service in the Reserves prior to 1971 was "active service" within the meaning of § 40.02(15). When defining "active military service" and "active service," WIS. ADM. CODE § ETF 10.01(1g) excludes "active duty for training." Morris argues that WIS. ADM. CODE § ETF 10.01(1g) was adopted after he filed his certiorari action and therefore, does not apply to him. By not attempting to counter Morris's contention, the Board concedes that WIS. ADM. CODE § 10.01(1g) does not apply to him. *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979).

However, the Board argued to the circuit court that WIS. ADM. CODE § ETF 10.01(1g) codified its longstanding administrative policy which excluded active duty for training from the definition of active service and active military service as those terms are used in

---

[5] The January 1, 1974 limitation arises under § 40.02(15)(c)1, STATS.

§ 40.02(15), STATS.[6] On appeal, the Board implicitly argues that its policy should control.

Morris argues all of his military service was "active service" because on all occasions he was "called into active duty and attached to a unit of the Regular Air Force to perform missions." But he does not dispute that his service was "active duty for training." As the circuit court noted, "[t]he fact that during his reserve 'active duty for training' he served alongside those who were 'regular military' does not change his own status."

In the alternative, Morris argues that the Board's policy wrongly denies creditable military service for active duty for training. Section 40.02(15)(c), STATS., does not define "active service" or "active military service." In support of its interpretation, the Board cites a dictionary definition that "active service" means "engaged in full-time service, esp. in the armed forces." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22 (1986). The definition is not useful. It hinges on the meaning of "full-time," defined in the same dictionary as "employed for or working the amount of time considered customary or standard." *Id.* at 919.

We conclude the terms "active military service" and "active service" in § 40.02(15)(c), STATS., are ambiguous because they are reasonably susceptible to more than one meaning. We therefore examine the statute's history, context, subject matter, scope and object of the statute. *Village of Shorewood v. Steinberg*, 174 Wis. 2d at 202, 496 N.W.2d at 61. We also consider the agency's interpretation of the statute. *UFE Incorporated*, 201

---

[6] David Stella, the Department of Employe Trust funds director of retirement and survivor benefit programs, testified the policy dated back to the enactment of ch. 96, Laws of 1981, the law that created the Wisconsin Retirement System.

Wis. 2d at 282, 548 N.W.2d at 60. We conclude we should give great weight to the Board's interpretation. The Board has the duty of administering the statute. Section 40.03, STATS. The Board's interpretation is one of long-standing and is based upon the agency's specialized knowledge interpreting the nature of federal military service. The Board's interpretation will provide uniformity and consistency in the application of the statute. We therefore must sustain the Board's interpretation of the terms "active service" and "active military service" in § 40.02(15)(c), if it is reasonable. *Harnischfeger*, 196 Wis. 2d at 661, 539 N.W.2d at 102.

Morris argues that we should adopt the definitions of "active service" and "active military service" as they appear in Title 10 of the United States Code. The absence of statutory definitions of terms critical to the administration of § 40.02(15)(c), STATS., could lead us to conclude the legislature intended to use federal definitions, since federal law controls the nature and type of service performed in the U.S. Armed Forces.

Title 10 defines "active service" as "service on active duty or full-time National Guard duty," 10 U.S.C. § 101(d)(3). "Active duty" is:

> full-time duty in the active military service of the United States. It includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. Such term does not include full-time National Guard duty.

10 U.S.C. § 101(d)(1).

An explanatory note following the definition of "active duty" when it appeared at 10 U.S.C. § 101(22) confirms that "active duty" includes "active duty for

training," even though the definition, then as now, does not use that term. The note explains that Title 10 drafters rejected a definition of "active duty" appearing elsewhere in the federal code in favor of the present definition because the other definition excluded active duty training.[7] The present renumbered definition of "active duty" in 10 U.S.C. § 101(d)(1) is identical to the previous 10 U.S.C. § 101(22).

Section 40.02(15)(c)4, STATS., specifically references Title 10. Under that subsection, Wisconsin public employees cannot receive creditable military service under § 40.02(15)(c) if they have used their active service in the armed forces to establish entitlement to federal retirement and disability benefits. Section 40.02(15)(c)4 exempts from this limitation active service used to establish entitlement for retirement pay for nonregular military service under Title 10 U.S.C. §§ 1331 to 1337. That program provides retirement pay to reserve members with at least twenty years of service. Reserve members are credited with one year of service if they gain more than fifty points in that year. Reserve members gain one point for each day of active service. As stated previously, Title 10 defines active service to include active duty for training.[8] Reserve members may use their active service in the regular armed forces towards this retirement program.

---

[7] The Note states:

In clause (22), the definition of "active duty" is based on the definition of "active Federal service" in the source statute, since it is believed closer to general usage than the definition in 50:901(b), which excludes active duty for training from the general concept of active duty. 10 U.S.C. § 101, Explanatory Notes.

[8] These sections, with minor revisions, now appear at 10 U.S.C. §§ 12731 to 12738.

When first enacted in 1981, § 40.02(15)(c)4, STATS., did not refer to Title 10 U.S.C. §§ 1331 to 1337. That reference was added by 1987 Wis. Act 62. A Joint Survey Committee on Retirement Systems Report recommended the enactment in order to comply with 10 U.S.C. § 1336. Report of Joint Survey Committee on Retirement Systems, Appendix to 1987 Senate Bill 19, at 3. 10 U.S.C. § 1336 provided:

> No period of service included wholly or in part in determining a person's right to, or the amount of, retired pay under this chapter [10 U.S.C. § 1331 et seq.] may be excluded in determining his eligibility for any annuity, pension, or old-age benefit, under any other law, on account of civilian employment by the United States or otherwise, or in determining the amount payable under that law, if that service is otherwise properly credited under it.

The Committee report cited *Cantwell v. County of San Mateo*, 631 F.2d 631 (9th Cir. 1980). The *Cantwell* decision compelled a county retirement system to comply with 10 U.S.C. § 1336. Cantwell had served roughly 3.5 years on active duty in the United States Navy and twenty years in the Naval Reserves. He obtained reserve retirement benefits under 10 U.S.C. §§ 1331 to 1337. California law allowed its public employees to receive credit towards their retirement benefits for their prior public service, but only if that prior service did not entitle them to receive a pension from their former public employer. Cantwell challenged the exception because it would have denied him county retirement credits for his active service in the United States Navy. The *Cantwell* court ruled that 10 U.S.C. § 1336 prevailed over California law and entitled

Cantwell to receive credit in the county retirement system for his 3.5 years of active Navy service. *Id.* at 637.

The drafting file to 1987 Wis. Act 62 contains a letter from two University of Wisconsin law professors, also citing *Cantwell*. Their letter states:

> Our problem is that the present Wisconsin law, which grants retirement credit for *active* military service by all other state of Wisconsin employes, expressly excludes from this benefit those of us who, *in addition to our active service*, did up to 20 or more years of extra reserve service in order to qualify for a limited federal reserve retirement benefit.

Letter to Senator Russell Feingold (March 18, 1986) (on file with the Legislative Reference Bureau). The professors offered the Senator a draft of the legislation virtually identical to the present wording of the statute. *Id.*

The agency's interpretation of the terms "active service" and "active military service" is reasonable. The Committee Report's citation to *Cantwell*, and the letter from the law professors make it apparent that when the legislature amended § 40.02(15)(c)4, STATS., to refer to 10 U.S.C. §§ 1331-37, the legislature assumed and intended that § 40.02(15)(c) grant creditable military service only for active service with the armed forces, and not active duty for training. In *Cantwell*, the public employee sought retirement credits only for his active service in the armed forces. The two university professors sought credit only for their active service. They provided a draft of proposed legislation to accomplish that end, and the proposed legislation was adopted. Based on the evidence he introduced at the hearing, Morris's service in the Reserves cannot be credited

under § 40.02(15)(c), STATS. We, therefore, affirm the circuit court's order affirming the Board's determination.

*By the Court.*—Order affirmed.